# GIVENS *v.* ZERBST, WARDEN OF THE UNITED STATES PENITENTIARY AT ATLANTA, GA.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 285. Argued October 13, 1920.—Decided January 31, 1921.

1. The authority to convene a general court-martial may be conferred upon the commander of a military camp by an order of the President under the 8th Article of War, which provides that "the commanding officer of any district or of any force or body of troops," may appoint such courts-martial when empowered by the President. P. 18.
2. A general order of the President lodging this power in the commander of designated military camps is judicially noticed as part of the law of the land, and the legality of a court-martial established under it is not affected by omission to refer to it in the order convening the court-martial. *Id.*
3. A general court-martial, so convened by a camp commander, has jurisdiction to try an officer of the rank of captain. P. 19.
4. The judgment of a court-martial is open to collateral attack for want of jurisdiction, and to sustain such a judgment it must appear that the facts essential to the jurisdiction existed when the jurisdiction was exercised. *Id.*
5. Where the due convocation of a court-martial with jurisdiction to try offenses of the class in question is established on the face of its record, the existence of a particular fact not so shown but acted upon by the court-martial, and necessary to its jurisdiction over the particular case, may be proven in support of its judgment upon a collateral attack. P. 20.
6. *Held*, that evidence was admissible in a *habeas corpus* proceeding to prove the military status of the relator at the time of his trial and conviction, where the record of the court-martial was silent on the subject beyond showing that he was charged as a captain in the army. *Id.*
7. Upon an appeal from a judgment in *habeas corpus*, evidence upon which the lower court's decision depended must be brought up in the record, though it need not be in the form of a bill of exceptions. *Id.*
8. In providing that "no person shall be tried by court-martial for

murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in time of peace," the 92nd Article of the Articles of War (1916), contemplates a complete peace, officially proclaimed. P. 21. *Kahn* v. *Anderson, ante*, 1.

9. An erroneous designation of the place for executing a sentence of imprisonment imposed by a court-martial does not go to the jurisdiction to sentence and does not entitle the accused to his discharge on *habeas corpus;* but he should be retained for a new designation. *Id.*

262 Fed. Rep. 702, affirmed.

THE case is stated in the opinion.

*Mr. John S. Strahorn,* with whom *Mr. Robert R. Carman* was on the brief, for appellant:

The authority to appoint general courts-martial is defined in the 8th Article of War. Camp commanders are not so authorized. They can only appoint, under Article 9, special courts-martial, which can not, under Article 13, try an officer. It was alleged, though not proven, that appellant was, if anything in the service, a captain of infantry. On its face, then, the record is deficient. To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted. *McClaughry* v. *Deming,* 186 U. S. 49, 63. If the jurisdiction does not appear on the face of the proceedings, the presumption of law is that the court has not jurisdiction. *Ex parte Watkins,* 3 Pet. 193, 204.

The introduction in evidence in the *habeas corpus* proceeding of the general order of the War Department did not cure the deficiency of the court-martial record. Davis, Military Law, 96, 139; *Dynes* v. *Hoover,* 20 How. 65, 81; *In re Grimley,* 137 U. S. 147, 150; *Grignon's Lessee* v. *Astor,* 2 How. 319; *Galpin* v. *Page,* 18 Wall. 350.

Neither the petitioner nor the Government can go outside the court-martial record, since any change in it would be in the nature of a review of the case.

The general order limited the jurisdiction it conferred on the commanding officers of camps to appoint general courts-martial, to cases of "persons subject to military law who are serving at camps commanded by them and who do not belong to tactical divisions serving thereat," etc. The Government has not attempted to show that the appellant was even stationed at this camp, or whether, as might have been the case, he happened there on the night of the crime. So far as this record shows, all we know about him is that he was alleged to be a captain in the United States Army. This was an essential and fatal omission.

The right to authorize the appointment is not questioned because of the manner in which the general order was issued; the right of the Secretary of War to act for the President is not denied. The questions here raised are based on statutory provisions. The right is claimed under the 8th Article of War. The action was not taken by the President under his inherent power to appoint such courts, (*Swaim* v. *United States*, 165 U. S. 553), but is claimed, by express language, under this statute. The President acting under the statute has no power to authorize a camp commander to appoint a general court-martial. The terms used in Article 8 do not include him, while Article 9, on the other hand, expressly specifies his authority—to appoint *special* courts-martial.

Whether "district" has or has not a technical meaning, Congress, by including the term with others such as "garrison," "fort," and "camp," has shown that it is not the same as a camp. Article 9. There is no proof in this record—nor is it a fact—that Camp Sevier is a "permanent military camp." Nor will it suffice to say that "the troops at the camp are ordinarily under the command of its commanding officer."

No doubt the President intended to confer the larger authority, but here the legal constitution of the court

depends upon the statute. *McClaughry* v. *Deming*, 186 U. S. 49, 65; *Swaim* v. *United States*, 165 U. S. 553; *Keyes* v. *United States*, 109 U. S. 336; *Ex parte Watkins, supra*, 204.

No jurisdiction was shown over the person, of the accused, because it was not proved that he was an officer. *Hamilton* v. *McClaughry*, 136 Fed. Rep. 445, 447, 448; *Ex parte Watkins, supra*, 204. Even the evidence offered in the present proceeding fails to show that he was an officer when the crime was committed. The time of the commission of the crime, not the date of the trial, determines amenability, *vel non*. The general finding is not sufficient. *In re Grimley*, 38 Fed. Rep. 84, 85; *Grignon's Lessee* v. *Astor*, 2 How. 319. Until and unless it appear, affirmatively, that he took the oath of allegiance (or at least that the court-martial formally found that he was in the service), he was not, in so far as this case is concerned, a soldier, and, if not (shown to be) a soldier, he was not amenable to military law.

Under the 92nd Article of War the court-martial had no jurisdiction over the crime because it was committed in time of peace. See Article 58 (old code), Act of March 3, 1863, 12 Stat. 736; *Coleman* v. *Tennessee*, 97 U. S. 509, 513, 514; Davis, Military Law, 456; *Dow* v. *Johnson*, 100 U. S. 158, 169; *Ex parte Milligan*, 4 Wall. 2.

What did Congress mean when it said in Article 92, that no person subject to military law should be tried by court-martial for murder committed "in time of peace"? That, because we might be at war with some enemy three thousand miles overseas, when all the courts of the State in which the crime was committed were open, a murder committed in such State should not be tried, *exclusively*, by the courts of that State? Suppose, for example, that we were technically at war with, say, the Republic of. Andora, with less than two hundred square miles of territory, and a total population of six thousand souls;

would all murders committed in the United States by persons subject to military law be triable by court-martial? If this were so, thousands might be deprived of a great common-law privilege, without semblance of necessity. See *Coleman* v. *Tennessee, supra.*

There should, indeed, be a terrible necessity confronting us before the great majority of officers in our army should be permitted to sit in judgment in a case of life or death. *Ex parte Milligan,* 4 Wall. 140. "When the King's courts are opened, it is a time of peace, in judgment of law." First Parliament, Edw. III; *Ex parte Milligan,* 4 Wall. 128; Winthrop, Abridgment Military Law (1899), 277.

In the Act of 1916, Article 92 evinces the purpose of Congress to limit the jurisdiction to a time of actual warfare, insurrection or rebellion,—as theretofore was the fact by express language of statute. Since the revision of 1874, the United States had become a world power; our armies were spreading out into "foreign parts," (Article 57, old code)—where, as in the United States during "war, insurrection and rebellion," we had no civil courts, and it was necessary that some jurisdiction over these serious crimes follow our armies. Hence the Article gives unlimited jurisdiction to courts-martial over these two crimes, except when committed by soldiers in the United States or in the District of Columbia. Congress, appreciating their seriousness placed them, for the first time, in a separate Article; and knowing the difficulties of law and fact involved in their trial, and the antipathy of the American people to any interference by the military with civil jurisdiction, was reluctant to give to these inferior courts the right to sit in judgment in these superior cases, except when and where necessity compelled. Winthrop, Military Law, 2nd ed., 1032, 1033, 1038, 1039.

The pleadings do not negative peace.

The confinement was unlawful, because the place was not properly designated, the case was not properly referred to the President, and—Could the President act while in Europe?

*The Solicitor General* and *Mr. R. P. Frierson*, for appellee, submitted.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

In his return to a writ of *habeas corpus*, which was allowed on the petition of appellant averring that he was restrained of his liberty in violation of his constitutional rights, the warden of the penitentiary at Atlanta, asserting the lawfulness of his custody of the petitioner, annexed as part of his return the following documents:

(1) A copy of General Orders, No. 56, issued by the President on June 13, 1918, conferring upon the commanders of designated camps, among them Camp Sevier, S. C., the authority to convene a general court-martial.

(2) General Court-Martial Orders, No. 139, issued by the War Department under date of April 29, 1919, announcing that under Special Orders, No. 172, dated "October 10, 1918, Headquarters, Camp Sevier, S. C.," (issued by the commanding officer of that camp) a general court-martial had convened at Camp Sevier on October 30, 1918, and before it there was arraigned and tried "Captain William J. Givens, Infantry, United States Army," under the charge of having murdered at or near Camp Sevier a named private soldier; that at the trial the accused officer had pleaded not guilty and, although acquitted of the charge of murder, had been found guilty of manslaughter and had been sentenced to dismissal from the Army and to ten years at hard labor at a place to be designated by the reviewing authority. The order

further recited the approval of the sentence by the review-
ing authority (the commander at Camp Sevier) and a
like approval, with direction that the sentence be exe-
cuted, made by the President on April 14, 1919, and con-
cluded by announcing the dismissal of the convicted
officer from the Army as of the date of April 30, 1919.

(3) A telegram from the War Department to the
commander at Camp Sevier announcing the approval
of the sentence by the President; the dismissal of the
officer from the Army; that the United States penitentiary
at Atlanta, Ga., was designated as the place of confine-
ment, and directing the said commander to deliver the
officer to that penitentiary.

(4) A letter from the Adjutant General of the Army
of date April 29, 1919, directed to the warden of the
penitentiary at Atlanta, transmitting him a copy of the
telegram sent to the commanding officer at Camp Sevier,
as previously stated, and informing him that in due season
a copy of the official order promulgating the trial, con-
viction and approval of the sentence would be sent to
him.

Upon a traverse of the return and the pleadings the
case was heard, and in a careful opinion the court, main-
taining the sufficiency of the return, discharged the writ
and remanded the petitioner to custody, and as the result
of an appeal the correctness of its action is here for deci-
sion.

The grounds relied upon for reversal relate to three
subjects: (1) the alleged illegality of the court, because
of want of power in the officer by whom it was called to
convene it; (2) the failure of the record to show that the
accused was an officer in the Army or was in any way
amenable to trial by court-martial, and the absence of
jurisdiction in the court, in any event, to try a charge
of murder, because by law no person could be tried by
court-martial for murder committed within the United

States in time of peace, and there was no averment negativing a time of peace, and, in fact, peace prevailed at the time of the trial; (3) the asserted unlawfulness of the confinement of the petitioner in the penitentiary at Atlanta, because the record failed to establish that that place had been designated by the President, the final reviewing authority.

We come to test these grounds in the order stated. The court was undoubtedly a general court-martial and was convened by the commander of Camp Sevier. The power to convoke it, however, is not to be solely measured by the authority possessed by a camp commander, but in the light of the authority given to the President by the 8th Article of War, to empower "the commanding officer of any district or of any force or body of troops" to appoint general courts-martial, and by the exertion of that power by the President manifested by General Orders, No. 56, conferring upon the commanding officer at Camp Sevier the authority to call a general court-martial. True, it is insisted that the words, "the commanding officer of any district or of any force or body of troops," are not broad enough to embrace' the commanding officer at Camp Sevier; that, in issuing Order No. 56, the President therefore exceeded the power conferred upon him, and hence that Order No. 56, in so far as it gave the power stated to camp commanders, was void. But the text of Article 8 so clearly demonstrates the unsoundness of the contention that we deem it unnecessary to refer further to it. And as General Orders No. 56 was a part of the law of the land, which we judicially notice without averment or proof (*Gratiot* v. *United States*, 4 How. 80, 117; *Jenkins* v. *Collard*, 145 U. S. 546, 560; *Caha* v. *United States*, 152 U. S. 211, 221), we think the contention that that law should not have been enforced because it was not referred to by the camp commander in exerting the power which he possessed in virtue of that order is also without merit.

These conclusions render no longer applicable the contention that the court-martial was without jurisdiction because a special court appointed by a camp commander had no jurisdiction to try an officer with the rank of captain, but they do not dispose of the proposition that the record failed to show that the accused belonged to the Army without reference to his rank and was therefore subject to trial by a military court.

Conceding that the possession by the accused of a status essential to the exercise by the court-martial of its power was jurisdictional and therefore may not be held to have existed merely because of an estoppel, and conceding further that, except for the form of the charge, the record failed to establish such status, we are brought to determine, as was the lower court, whether evidence was admissible to show such capacity at the time of the trial and conviction and thus make clear the precise condition upon which the court acted.

Undoubtedly courts-martial are tribunals of special and limited jurisdiction whose judgments, so far as questions relating to their jurisdiction are concerned, are always open to collateral attack. True, also, is it that in consequence of the limited nature of the power of such courts the right to have exerted their jurisdiction, when called in question by collateral attack, will be held not to have existed unless it appears that the grounds which were necessary to justify the exertion of the assailed authority existed at the time of its exertion and therefore were or should have been a part of the record. *Wise v. Withers*, 3 Cranch, 331; *Ex parte Watkins*, 3 Pet. 193, 209; *Dynes v. Hoover*, 20 How. 65; *Runkle v. United States*, 122 U. S. 543, 555; *McClaughry v. Deming*, 186 U. S. 49, 62–63.

The question before us is thus a narrow one, since it comes only to this: In a case, such as that before us, where the power to convoke a court-martial is established

on the face of the record and the authority of the court to decide the particular subject before it is therefore undoubted, does the right exist, in the event of a collateral attack upon the judgment rendered, made on the ground that a particular jurisdictional fact upon which the court acted is not shown by the record to have been established, to meet such attack by proof as to the existence of the fact which the court treated as adequately present for the purpose of the power exerted?

Considering that subject in the light stated, we think the court below was right in admitting, as it did, evidence to show the existence of a military status in the accused, since it did not change the court-martial record but simply met the collateral attack by showing that at the time of the trial the basis existed for the exertion by the court of the authority conferred upon it.

It is true that general expressions will be found in some of the reported cases to the effect that wherever a fact upon which the jurisdiction of a court-martial or other court of limited jurisdiction depends is questioned it must appear in the record that such fact was established. But these expressions should be limited in accordance with the ruling which we now make. We so conclude because the complete right to collaterally assail the existence of every fact which was essential to the exercise by such a limited court of its authority, whether appearing on the face of the record or not, is wholly incompatible with the conception that, when a collateral attack is made, the face of the record is conclusive. Indeed, some of the leading cases make clear the incongruity of any other conclusion and serve to indicate that the expressions as to the face of the record contemplate, not the record assailed by the collateral attack, but the record established as the result of the proof heard on such attack. *Galpin* v. *Page,* 18 Wall. 350; *Runkle* v. *United States,* 122 U. S. 543.

Although there is no bill of exceptions, as the case is

here on appeal the evidence upon which the court below acted is open for our consideration and would seem to be in the record, although a compliance with the præcipe of the appellant would have required the clerk to exclude it. Under these conditions we content ourselves with saying that, if as a consequence of the action of the appellant the proof is not in the record, the means of examining the conclusion of the court in that respect would be wanting and we could not disturb the decree appealed from. If on the other hand the documents in the record, not referred to by the præcipe of the appellant, embraced the proof which the court admitted and upon which it acted, we are of opinion that they abundantly sustain the conclusion which the court based upon them and therefore make clear the existence at the time of the trial of a military status in the accused officer adequate to sustain the jurisdiction of the court-martial.

The contention that the court was without jurisdiction because the trial occurred in a time of peace and that under that condition Article of War 92 deprived courts-martial of jurisdiction to try for murder, has been held to be without merit in *Kahn* v. *Anderson,* No. 421, this day decided, *ante,* 1, which therefore disposes of that question as presented here. This renders it unnecessary to consider the Government's insistence that, as the conviction was for manslaughter, the trial was for that crime, although the charge was murder.

As respects the designation of the penitentiary at Atlanta as the place for executing the sentence at hard labor which was imposed, we are of opinion that, if effect be given to documents which are in the record and to which the lower court referred, it would clearly result that the court rightly held that, under the conditions disclosed, the order for confinement at Atlanta was virtually the order of the President, and the contention to the contrary now made is devoid of merit. *United States* v.

*Page,* 137 U. S. 673, 678–682; *United States* v. *Fletcher,* 148 U. S. 84, 88–91; *Ide* v. *United States,* 150 U. S. 517; *Bishop* v. *United States,* 197 U. S. 334, 341–342. But, as pointed out by the court below, the mere designation of the place for carrying out the sentence did not involve the jurisdiction of the court (*Schwab* v. *Berggren,* 143 U. S. 442, 451; *In re Cross,* 146 U. S. 271, 277–278), and if erroneous would only lead to retaining the accused for a new designation of place of confinement, and we see no reason under the condition of the record to reverse the action of the court below on that subject.

What we have said disposes of every material contention in the case, although we have not expressly noticed the many suggestions based upon the supposed duty on the trial, before the court-martial, to negative every possible condition the existence of which might have prevented that court from trying the case, among which was the possibility that the officer under trial might have belonged to a command which did not come within the power to call a court-martial conferred upon the camp commander by General Orders, No. 56, particularly since the suggestion now made on that subject seems to have been an afterthought and not to have been called to the attention of the court below in any way.

*Affirmed.*