## VER MEHREN v. SIRMYER, Commandant, etc.

Circuit Court of Appeals, Eighth Circuit. December 12, 1929.

No. 8620.

Casper Schenk, of Des Moines, Iowa (Charles S. Bradshaw and Rex H. Fowler, both of Des Moines, Iowa, on the brief), for appellant.

Ray C. Fountain, Asst. U. S. Atty., of Des Moines, Iowa, and Capt. G. S. Woolworth, J. A. G. D., of Omaha, Neb. (Ross R. Mowry, U. S. Atty., of Newton, Iowa, and Frank F. Wilson, Asst. U. S. Atty., of Mt. Ayr, Iowa, on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

BOOTH, Circuit Judge. This is an appeal from an order dismissing a writ of habeas corpus, through which appellant, petitioner below, was seeking relief from a judgment of a general court-martial convicting him of desertion from the United States Army.

The main contention of the appellant is that he never was lawfully inducted into the military service, and hence that the court-martial had no jurisdiction to try him for the alleged offense.

The following facts appear: June 15, 1917, petitioner registered for the draft at Omaha, Neb., where he lived. On August 16, 1917, the local board for division 1 of that city, after physical examination, issued him a "certificate of discharge because physically deficient." On November 8, 1917, new Selective Service Regulations were issued by the War Department. By section 4 thereof prior

discharges were revoked. Thereafter, on December 24, 1917, petitioner filed his questionnaire, in which he claimed exemption from the draft because of the dependency of his mother. The exemption was denied, and on January 26, 1918, he was ordered to appear for physical examination (S. S. R. § 122). On February 2, 1918, petitioner appeared and was examined by the examining physician of the local board.

The Selective Service Regulations, which have the force and effect of law (section 6) provided (section 122) that the examining physician should immediately inform the registrant whether he was qualified or disqualified for military service; and further provided (section 122, note):

"Note.—Whether the examining physician of the Local Board is in doubt or not as to the physical qualification of a registrant for military service he shall nevertheless definitely report the registrant either as qualified or disqualified, and if he is in doubt as to such qualification or disqualification he may request to have the registrant sent before a Medical Advisory Board as prescribed in Section 123."

In the case of petitioner, the examining physician did not inform petitioner whether he was qualified or disqualified; nor did the examining physician make report as provided by S. S. R. § 122, note, but instead reported as follows:

"I certify that I have carefully examined the person named on the first page hereof and have carefully recorded the results of the examination, and that it is my judgment and belief that he

is {
physically qualified for general military service
physically qualified for special or limited military service as ——
physically deficient and not physically qualified for military service by reason of ——

"Place Omaha, Nebr.
"Dated Feb. 2, 1918.
          "C. C. Morison, M. D.,
               (Examining Physician.)"

thus leaving the matter entirely undetermined.

On the trial below petitioner offered to show that the examining physician told him that he was unable to determine whether petitioner was qualified or not, and suggested that petitioner appeal to the medical advisory board. This offer to prove was rejected; as was a further offer to prove that the examining physician told petitioner that the matter would be reported by the medical advisory board to the local board, and that the local board would immediately send petitioner a notice if he was accepted under the draft.

In any event, petitioner signed an application to be sent to the medical advisory board for further examination, and the matter was referred to that board by the local board.

On February 9, 1918, the medical advisory board reported to the local board that petitioner was physically qualified for general military service; and on the same day the local board made a finding to the same effect.

Section 124, S. S..R., provided:

"The Local Board shall, on the day of its decision as to the physical qualification of any registrant, mail to such registrant a notice (Form 1011) of the result of such decision and shall enter the date of such mailing in column 21 of the Classification List (Form 1000)."

Neither of these provisions of law was complied with. The notice required to be sent (Form 1011 [section 283, S. S. R.]) was of peculiar importance. It read, in the event the registrant was found qualified, as follows:

' "Local Board for ——.
          "——.
               (Date)

"You are hereby notified that, as a result of your physical examination, you have been found by the Local Board qualified for military service which leaves you in Class —— subject to call in your order of call when the Government may have need of your services.
          "——, Member of Local Board."

The classification list (Form 1000) was a list containing the names of persons liable to be called, to determine their availability for military service. It was posted in the office of the local board. On it, after the name of each registrant, were numbered columns, in which were to be inserted the dates of the various steps taken in reference to each registrant.

The importance of the notice above quoted, as well as of the classification list, will be apparent from the provision of section 125, S. S. R. which reads in part as follows:

"Within five days after the date of the notice prescribed in section 124 any registrant may make a claim of appeal to the District Board from the finding of the Local Board as to his physical qualification for military service."

The importance will also be apparent from the provision of section 8, S. S. R., which reads as follows: "In computing the several periods of time within which any act is required or permitted by the Selective

Service Law and these Rules and Regulations to be performed by registrants and other persons, the day of the posting of notice, and Sundays and legal holidays, shall be excluded;" and from the provisions of section 7, S. S. R., which reads as follows:

"(b) Whenever a duty is to be performed or a period of time begins to run within which any duty is to be performed by any such registrant, or within which any right or privilege may be claimed or exercised by or in respect of any such registrant, a notice of the day upon which such duty is to be performed, or such time begins to run, shall be mailed to the registrant, and the date of such mailing of notice shall be entered opposite the name of such registrant on the Classification List, which is always open to inspection by the public at the office of the Local Board."

"(d) Either the mailing of such notice or the entry of such date in the Classification List shall constitute the giving of notice to the registrant and to all concerned, and shall charge the registrant and all concerned with notice of the day upon which such duty is to be performed or the beginning of the running of the time within which such duty must be performed or such right or privilege may be claimed, regardless of whether or not a mailed notice or Questionnaire is actually received by the registrant or other person."

No notice was given, or posting in reference to the decision on physical examination was made. No opportunity was given the petitioner to appeal to the district board as he had a right to do under section 125, S. S. R.

In the classification list opposite the name of petitioner appear the following entries pertinent here:

"19. Date of notice to appear for physical examination. (Sec. 122). 1—26—18

"20. Date of appearance for physical examination (Sec. 122). 2—2—18

"21. Date of mailing decision on physical examination (Sec. 124). (No entry.)

"22. Date of appeal from physical examination and forwarding record to District Board (Sec. 125). (No entry.)

"23. Date of return of physical examination from District Board and mailing notice of classification (Sec. 127). (No entry.)

"24. Date and hour to report for military duty and entrainment (Sec. 157). 3—30—18 9 A. M."

Section 157, S. S. R., provides that the Provost Marshal General shall notify each State Adjutant General when and where to furnish the quotas of the state. The Adjutant General shall thereupon notify the local board of the exact number to be furnished by said board and the date, hour, and place of entrainment. Upon receipt of this notification it was the duty of the local board to enter in the proper column on the classification list after the name of the registrant the day and hour on which the registrant was to report to the local board. It was further the duty of the local board, on making such entry on the classification list, to mail to the registrant an order (Form 1028, including Form 1028A) to report to the local board at the hour, day, and place specified.

The entrainment order was received by the local board on March 24, 1918. On the classification list opposite the name of the petitioner, in the column headed, "Date and hour to report for military duty and entrainment," appears the entry, "3—30—18 9 A. M." When this entry was made does not clearly appear. The order (Form 1028, including Form 1028A) to the registrant to appear, was never mailed. Form 1028 appears to have been filled out on March 30, 1918, but remained in the official files.

Form 1028 stated the day and hour when the registrant was to report. It further stated:

"From and after the day and hour just named you will be a soldier in the military service of the United States."

Form 1028A stated:

"Important Notice to all Men Selected for Military Service and Ordered to Report to a Local Board for Military Duty.

"The day and hour specified on the Classification List of this Local Board, and on the order and notice of induction into military service which accompanies this notice for you to report to this Local Board for military duty, is the time that marks your actual obligation as a soldier of the United States.

"Failure to report promptly at the hour and on the day named is a grave military offense, for which you may be court-martialed. Willful failure to report, with an intent to evade military service, constitutes desertion from the Army of the United States, which in time of war is a capital offense."

On March 16, 1918, however, a notice (known as Form 164B) was mailed, addressed to petitioner, telling him to hold himself in readiness to report for military duty; on March 24, 1918, a notice (known as Form 164C) was mailed, addressed to petitioner, telling him to report March 30, 1918, at 9 a. m. Neither of these notices ever reached petitioner. Further, they were not the notices required by the Selective Service Regulations, but were old forms which had been in use under regulations issued August 8,

1917, and which had been superseded by the Selective Service Regulations of November 8, 1917. The latter Selective Service Regulations contained the following:

Sec. 3. "On and after noon on December 15, 1917, all pre-existing Rules and Regulations shall be and hereby are rescinded and repealed and shall have no further force or effect, except" (as to matters not here involved).

By section 5, S. S. R., the forms, including 1028 and 1028A, were expressly made part of the Selective Service Regulations.

The petitioner, having received none of the notices mentioned, failed to appear for entrainment on March 30, 1918; and the local board on April 6, 1918, reported him as having failed to report. It may be noted in passing that this action of the local board also was not performed in accordance with the provisions of the Selective Service Regulations.

In September, 1918, petitioner was arrested; and in October, 1918, was tried before a general court-martial for desertion. On the trial, Mr. Meyers, one of the members of the local board, testified that the petitioner came to the local board office about two weeks prior to March 30, 1918, and upon inquiry was told that his name was on the entrainment list that was just made up. Petitioner testified that he had received no notice and did not know until after his arrest that he had been found physically qualified for general military service. He denied being in the office of the local board in March, and testified that he was married on the 25th of February, 1918, at Papillion, Neb., and had gone from there to Chicago, Cleveland, St. Louis, Kansas City, Denver, and Casper, Wyo., on his honeymoon and on his business as a traveling salesman.

Petitioner was found guilty of desertion and sentenced to be dishonorably discharged, and to be confined at hard labor for 30 years.

The reviewing authority, in commenting on the case, said:

"Considerable hearsay testimony, not objected to by the defense, was received in evidence, and the court erroneously refused to sustain an objection by the defense to a question calling for an opinion of a member of the Local Board which had jurisdiction over the accused, as to whether or not the accused had been properly inducted into the service."

It, however, affirmed the finding of guilty, but reduced the term of imprisonment to 20 years.

After the Armistice, and while waiting to be transported to the place of confinement, the petitioner escaped from his guard. He voluntarily surrendered himself to the commanding officer at Ft. Des Moines in 1929; and thereafter filed the present petition for a writ of habeas corpus. Meanwhile, his sentence had been reduced by the Adjutant General of the Army, by direction of the President and order of the Secretary of War, to one year.

The District Court, upon the hearing in the habeas corpus proceeding, held that the petitioner was inducted into the military service on March 30, 1918; and that the court-martial had jurisdiction to try petitioner for the alleged crime of desertion. It further held that in any event the petitioner had waived the jurisdiction of the court-martial, by reason of the following proceedings which took place before the court-martial after it had convened:

"Defense: I just want, if the Court please, to call the attention of the Court to this one position of the defense, and that is, if the accused is not guilty of the first charge, of desertion, it is because he was not in the military service at that time, and if he was—

"President: May I ask the counsel for defense if he wishes to put in a plea against the jurisdiction of the Court?

"Defense: No, we have no plea in bar or abatement; we plead not guilty, sir, and we waived our opportunity of demurrer, as I understand it.

"Prosecution: You may make your plea to the jurisdiction, if you please, right now.

"Defense: We waive it. And the fact that either this man was guilty or not guilty of the first charge, namely, of desertion,— if he was not guilty of desertion it is because he was not in the military service at that time."

We do not think that the jurisdiction of the court-martial could be waived by petitioner if he had not been lawfully drafted into the military service. The Second Article of War (10 USCA § 1473) defines persons subject to military law. The subject-matter is limited. It does not include persons not in military service. There are exceptions, not here pertinent.

Even in civil cases consent cannot confer jurisdiction over subject-matter upon a federal court as such. In Thomas v. Board of Trustees, 195 U. S. 207, the court said, at page 211, 25 S. Ct. 24, 25, 49 L. Ed. 160:

"As late as in Minnesota v. Northern Securities Co., 194 U. S. 48, 62, 63, 24 S. Ct. 598, 601, 48 L. Ed. 870, 877, 878, we said, both parties insisting upon the jurisdiction of the circuit court: 'Consent of parties can

never confer jurisdiction upon a Federal court. If the record does not affirmatively show jurisdiction in the circuit court, we must, upon our own motion, so declare and make such order as will prevent that court from exercising an authority not conferred upon it by statute.'" See also Minnesota v. Hitchcock, 185 U. S. 373 [22 S. Ct. 650, 46 L. Ed. 954].

In Elgin v. Marshall, 106 U. S. 578, 580, 1 S. Ct. 484, 486, 27 L. Ed. 249, the court in its opinion said:

"As jurisdiction cannot be conferred by consent of parties, but must be given by the law, so it ought not to be extended by doubtful constructions."

In 22 Ops. Attys. Gen. 137, it was held that consent of the accused could not confer jurisdiction on a court-martial not possessing it by virtue of statutory authority.

The question remains whether the court-martial, whose judgment is attacked in the present proceeding, had jurisdiction to try petitioner as a deserter.

A "court-martial" is a tribunal of special and limited jurisdiction. Its judgments are open to collateral attack so far as questions relating to jurisdiction are concerned. McClaughry v. Deming, 186 U. S. 49, 22 S. Ct. 786, 46 L. Ed. 1049; Givens v. Zerbst, 255 U. S. 11, 41 S. Ct. 227, 65 L. Ed. 475; Collins v. McDonald, 258 U. S. 416, 42 S. Ct. 326, 66 L. Ed. 692.

In the McClaughry Case, 186 U. S. 63, 22 S. Ct. 786, 791, 46 L. Ed. 1049, the court quoted with approval the following from Runkle v. United States, 122 U. S. 543, 555, 7 S. Ct. 1141, 30 L. Ed. 1167:

"'A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. When the object of its creation has been accomplished, it is dissolved. 3 Greenl. Ev. § 470; Brooks v. Adams, 11 Pick. [Mass.] 441, 442; Mills v. Martin, 19 Johns (N. Y.) 7, 30; Duffield v. Smith, 3 Serg. & R. [Pa.] 590, 599. Such, also, is the effect of the decision of this court in Wise v. Withers, 3 Cranch, 331, 2 L. Ed. 457, which, according to the interpretation given it by Chief Justice Marshall in Ex parte Watkins, 3 Pet. 193, 209, 7 L. Ed. 650, 655, ranked a court-martial as "one of those inferior courts of limited jurisdiction whose judgments may be questioned collaterally." To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had been complied with, and that its sentence was conformable to law. Dynes v. Hoover, 20 How. 65, 80, 15 L. Ed. 838, 844; Mills v. Martin, 19 Johns. (N. Y.) 33. There are no presumptions in its favor, so far as these matters are concerned.'"

The burden is upon the party asserting the validity of the judgment of the court-martial to prove the existence of the necessary jurisdictional facts. In Givens v. Zerbst, supra, 255 U. S. page 19, 41 S. Ct. 227, 229, 65 L. Ed. 475, the court said: " * * * In consequence of the limited nature of the power of such courts the right to have exerted their jurisdiction, when called in question by collateral attack, will be held not to have existed unless it appears that the grounds which were necessary to justify the exertion of the assailed authority existed at the time of its exertion and therefore were or should have been a part of the record." These jurisdictional facts may appear on the face of the court-martial record, or they may be shown by extrinsic evidence when the collateral attack is made. Id.

In the case at bar, among the jurisdictional facts necessary to appear was that the court-martial had jurisdiction of the subject-matter. In other words, that the accused had the status prescribed by the Second Article of War (U. S. Comp. Stat. § 2308a, now 10 USCA § 1473). That article provided who should be subject to military law, and so far as here material read:

" * * * And all other persons lawfully called, drafted, or ordered into, or to duty or for training in, the said service, from the dates they are required by the terms of the call, draft or order to obey the same."

The inquiry thus narrows itself down to this: At the time of the court-martial proceedings, had the accused ever been lawfully inducted into the military service? If he had not been lawfully inducted, then the court-martial had no jurisdiction to carry on the proceedings which resulted in the judgment of conviction.

The answer to the foregoing inquiry is to be found by considering the steps already outlined which were taken by the local board in reference to the petitioner.

It should be noted in passing that the local draft boards were administrative boards; quasi judicial boards with limited jurisdiction and powers. The steps necessary to induct a person into the military service were laid down by the Selective Service Regulations. These regulations had the force of law and were binding alike on the local

boards and on the registrants. Necessary steps required to be taken in a prescribed way could not be taken in some other way; a fortiori, they could not be totally omitted. This is elementary law, and was concisely stated in Raleigh, etc., R. Co. v. Reid, 13 Wall. 269, 270, 20 L. Ed. 570: "When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode."

In the case at bar the local draft board failed in a number of particulars to take the steps necessary to the induction of petitioner into the military service. It utterly failed to mail him any notice that he had been found physically qualified for military service. It utterly failed to post notice of such fact on the classification list. Both acts were required by the Selective Service Regulations. They were acts in regard to an important matter. Upon them depended the opportunity for appeal to the district board by the registrant for the final determination of the matter; and the importance is emphasized by the fact that he had been once examined and pronounced physically disqualified. Giving the fullest credence and weight to the testimony of Mr. Meyers, and having in mind the subsequent notices which were sent to the registrant, but not received by him, relative to entrainment, yet it nowhere appears in the record that he was ever apprised of the fact that he had been found physically qualified until after his arrest. Examination of the posted classification list would have given him no information, for the reason that the local board had omitted to make the required entry on such list. We think that under the facts of this case the determination of the physical qualification of petitioner, and the notice to him of such determination, were indispensable prerequisite steps to his lawful induction into the military service.

Further, the local draft board failed to comply with the Selective Service Regulations in regard to sending to petitioner the order of induction into the military service and notifying him of the time and place for him to appear for entrainment. The Selective Service Regulations required the mailing of the order (Forms 1028 and 1028A). No such order was ever mailed to petitioner. It would appear from the record that the order was made out on March 30, 1918, but never mailed. It is true that an entry, "3—30—18 9 A. M." was made on the classification list; and it is contended that under section 157, S. S. R., this entry was the equivalent of the mailing of the order. It is not shown in the record when this entry was made. If it was

made on the day on which the order (Form 1028) was made out but not mailed, it was not due notice and was not made as required by the Selective Service Regulations. We might indulge in the presumption that the local board did its duty and made the entry on the classification list at the proper time; the presumption is very much weakened, however, by the record fact that the board had signally failed to do its duty in another respect in regard to this same matter. But even if the entry, "3—30—18 9 A. M." on the classification list were made at the proper time, that alone would not suffice. The making of that entry opposite the name of petitioner on the classification list and the mailing of the order (Forms 1028 and 1028A) were neither of them authorized steps unless the preceding necessary steps had been taken. In the case of petitioner those steps, as we have shown, had not been taken.

It is true the local draft board mailed to petitioner two notices; one on March 21, 1918, the other on March 24, 1918. Neither of them were received by petitioner. These notices were not those provided by the Selective Service Regulations. They were old forms 164B and 164C, which had been expressly superseded by Forms 1028 and 1028A. Nor were the notices (164B and 164C) the equivalent of the notices, Forms 1011, 1028, and 1028A. By no notice and in no manner did the local draft board ever notify or attempt to notify petitioner that he had been found physically qualified for military service.

The induction of a civilian into military service is a grave step, fraught with grave consequences. It means, among other things, that he is subject to military law instead of to the ordinary common and statutory law. A new status is taken on; he becomes a soldier; new responsibilities are assumed; failure to strictly meet those responsibilities is followed by extreme punishment. All this is quite right and necessary, and meets no criticism at our hands. But what we emphasize is the necessity that all the steps prescribed by statute, and by regulations having the force of law, shall be strictly taken before it can be held that a person has been lawfully inducted into the military service. In the case at bar those steps were not taken.

We therefore hold that petitioner was never lawfully inducted into the military service; that the court-martial had no jurisdiction to try him as a deserter; that its judgment was void; that the District Court erred in not granting the writ of habeas cor-

pus and discharging the petitioner. The order of the District Court is accordingly reversed, with directions to grant the writ of habeas corpus and discharge the petitioner.