Ex parte STEWART.
No. 2341.

District Court, S. D. California,
Central Division.
Sept. 30, 1942.

A. L. Wirin, of Los Angeles, Cal., for petitioner.

Leo V. Silverstein, U. S. Atty., and Howard V. Calverley, Asst. U. S. Atty., both of Los Angeles, Cal., for the Government.

YANKWICH, District Judge (after stating the facts as above).

Except where an appeal is authorized, the Selective Service Act makes the decision of the Board on classification final. 50 U.S.C.A.Appendix § 310(a); see: United States ex rel. Broker v. Baird, D.C.N.Y.1941, 39 F.Supp. 392, 394. In the trial of cases for violations of the Act, the Judges of this district have declined to submit to the jury the question of the correctness of the classification. But they have allowed inquiry to determine whether there was a hearing. And, in submitting the question of guilt or innocence to the jury, we have, invariably, informed them that they do not sit as a court of appeal. I have repeatedly given the following instruction:

"You are not sitting as a court of appeal to determine whether the draft board was right in its determination of the classification of the defendant. The actions of the draft board were gone into merely for the purpose of showing what opportunity was afforded to the defendant to present his proof for the classification he claimed. So that, from it and all the remainder of the evidence in the case, you may determine whether there was a refusal or neglect on the part of the defendant to do what the law required of him and whether, if you find beyond a reasonable doubt that there was such refusal or neglect, the defendant did so refuse or neglect knowingly."

Recently, the Third Circuit Court of Appeals has had the matter before it and has sustained the view embodied in the practice. United States v. Grieme, 3 Cir., 1942, 128 F.2d 811, 814.

412

■ Notwithstanding this, however, the district courts may entertain writs of habeas corpus questioning the classification. These are not in the nature of a trial of the merits of the classification. The object of the writ, in such cases, is merely to determine whether there was a hearing and *not* whether a proper determination was arrived at.

Precedents sustaining this view are available not only as to the present Selective Service Act, but also as to similar acts containing similar words of finality in effect during the Civil War and the first World War. See Stingle's Case, 1863, 23 Fed.Cas. page 107, No. 13458; Angelus v. Sullivan, 2 Cir., 1917, 246 F. 54; Arbitman v. Woodside, 4 Cir., 258 F. 441, 442; Ver Mehren v. Sirmyer, 8 Cir., 1929, 36 F.2d 876; Dick v. Tevlin, D.C.N.Y.1941, 37 F.Supp. 836; Petition of Soberman, D.C.N.Y.1941, 37 F. Supp. 522; United States ex rel. Filomio v. Powell, D.C.N.J.1941, 38 F.Supp. 183; Application of Greenberg, D.C.N.J.1941, 39 F. Supp. 13; United States ex rel. Errichetti v. Baird, D.C.N.Y.1941, 39 F.Supp. 388; United States ex rel. Pasciuto v. Baird, D.C.N. Y. 1941, 39 F.Supp. 411; United States ex rel. Ursitti v. Baird, D.C.N.Y.1941, 39 F. Supp. 872; Shimola v. Local Board, D.C. Ohio 1941, 40 F.Supp. 808; United States v. Grieme, 3 Cir., 1942, 128 F.2d 811, 814; Micheli v. Paullin, D.C.N.J.1942, 45 F. Supp. 687. See note 1940, 129 A.L.R. 1171, 1182 et seq.; note 30 Cal.Law Rev. (1942) 226. (See Note 1).[1]

■ The need for a competent judicial authority to question the possible arbitrariness of a board is clearer, because of the fact that no questioning of the action of the Board is allowed in a prosecution resulting from disobedience of any of the orders issued by the Board. Were it otherwise, we would have an instance of finality of administrative action, which might leave a person at the mercy or caprice of a lay board, without the power to review its arbitrariness, abuses of authority or even lack of jurisdiction. Such a situation would be inconsistent with the doctrine of limited sovereignty, which is at the basis of our constitutional structure, and which postulates the existence in the individual of certain rights which he can assert against the sovereign power itself. And, perhaps, the most fundamental of these rights is the right of freedom of person, of which the individual cannot be deprived, even in war time, except through machinery which guarantees the fundamentals of due process. See, Yankwich, The Constitution and the Future, Ch. III.

Counsel for the Government, in effect, concede this. But they insist that the defendant should submit himself to induction first, and then question the classification. They insist that there is no precedent for the issuance of the writ against the marshal while he is holding him in custody under a complaint which charges him with failing to obey the lawful order of the Board. I cannot agree with this view.

■ Grave danger to orderly legal process would result from sanctioning it. For it is the function of the writ of habeas corpus to question the right of any agency of the Government to deprive a person of his liberty at any stage when a person is put under restraint by an authority, the legitimacy of which, *or of the edicts of which,* he challenges. Constitution of the United States, Art. I, § 9, Clause 2; 28 U.S.C.A. § 453; In re Neagle, 1890, 135 U.S. 1, 40–43, 10 S.Ct. 658, 34 L.Ed. 55; Mooney v. Holohan, 1935, 294 U.S. 103, 113, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Johnson v. Zerbst, 1938, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461; McNally v. Hill, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238; Bowen v. Johnston, 1939, 306 U.S. 19, 26, 59 S.Ct. 442, 83 L.Ed. 455; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Smith v. O'Grady, 1941, 312 U.S. 329, 331, 61 S.Ct. 572, 85 L.Ed. 859; Holiday v. Johnston, 1941, 313 U.S. 342, 350, 550, 61 S.Ct. 1015, 85 L.Ed. 1392; Waley v. Johnston, 1942, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Angelus v. Sullivan, 2 Cir., 1917, 246 F. 54, 64. Absent congressional action, the writ cannot

---

[1] The decision of the Ninth Circuit Court of Appeals in Local Draft Board No. 1 v. Connors, 1941, 124 F.2d 888, does not go counter to the view here expressed. The narrow question which the court there considered was whether a district court could interfere, by injunction, with a classification which denied to a student deferment while pursuing a college career. The opinion intimates clearly that, in cases arising under Selective Service, the jurisdiction of the district court to inquire into the legality of the Act is limited to habeas corpus. Opinion, page 391 of 124 F.2d. In a footnote (3) to the text, on this point, Judge Stephens cites cases arising under the Selective Service Act of 1917, 50 U.S.C.A. Appendix § 201 et seq., which sustain the view herein expressed.

be denied even in wartime. See Ex parte Milligan, 1866, 4 Wall. 2, 125, 18 L.Ed. 281; Ex parte Quirin et al., 63 S.Ct. 1, 87 L.Ed. ——, decided July 31, 1942.

The exact point in a proceeding when the writ may be resorted to is not strictly delimited. So long as there is a detention, as the consequence of the final decision of an administrative body, and all administrative remedies have been exhausted, the writ will lie. Resort to the writ, in selective service cases, does not call for induction as a condition precedent.

In United States ex rel. Filomio v. Powell, D.C.N.J.1941, 38 F.Supp. 183, the Government contended that when Filomio presented himself for induction, he waived the right to habeas corpus. It was urged that Filomio should subject himself to charges of desertion in order to be able to test his detention on habeas corpus. The Court rejected the contention, saying:

"The function of the writ of habeas corpus is to release a person unlawfully restrained of his liberty. Submission to that restraint under protest as in the case at bar obviously should not deprive one of that right. That the petitioner should subject himself to charges of desertion at the instance of the military authorities in order to preserve his inherent right to release from unlawful restraint under habeas corpus is a requirement far too exacting to be projected into this field of the law without direct authority therefor.

"We do not think that Filomio's conduct constitutes a waiver of civil release: He submitted with unequivocal protest; he refused to take the oath on induction, and we conclude that he could not have more peremptorily demonstrated his objection without forcibly resisting induction—this he was not required to do." United States ex rel. Filomio v. Powell, 38 Fed.Supp. 183, 186.

In Ver Mehren v. Sirmyer, 8th Cir.1929, 36 F.2d 876, the petitioner submitted to induction. He deserted, was tried by courtmartial, imprisoned and escaped his guard. The question arose whether the writ would lie. And the Court not only held that it did lie, but also ruled that the Board was wrong in drafting the petitioner. The Court said:

"In the case at bar the local draft board failed in a number of particulars to take the steps necessary to the induction of the petitioner into the military service. It utterly failed to mail him any notice that he had been found physically qualified for military service. It utterly failed to post notice of such fact on the classification list. Both acts were required by the Selective Service Regulations." Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876, 881.

The Court thus went behind the courtmartial back to the Board, and having found that the Board had improperly inducted him, it wiped out the courtmartial conviction entirely. In other words, after the petitioner had actually been convicted by courtmartial, the Court proceeded to review, not his conviction, but the legality of the action of the Selective Service Board, in inducting him, in the first instance, saying:

"The induction of a civilian into military service is a grave step, fraught with grave consequences. It means, among other things, that he is subject to military law instead of to the ordinary common and statutory law. A new status is taken on; he becomes a soldier; new responsibilities are assumed; failure to strictly meet those responsibilities is followed by extreme punishment. All this is quite right and necessary, and meets no criticism at our hands. But what we emphasize is the necessity that all the steps prescribed by statute, and by regulations having the force of law, shall be strictly taken before it can be held that a person has been lawfully inducted into the military service. In the case at bar those steps were not taken.

"We therefore hold that petitioner was never lawfully inducted into the military service; that the court-martial had no jurisdiction to try him as a deserter; that its judgment was void; that the District Court erred in not granting the writ of habeas corpus and discharging the petitioner. The order of the District Court is accordingly reversed, with directions to grant the writ of habeas corpus and discharge the petitioner." Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876, 881, 882.

Another leading case, from the last war, is Angelus v. Sullivan, 2 Cir., 1917, 246 F. 54. We quote:

"And if an individual is restrained of his liberty by a decision of an executive officer or board declared final by statute, he may nevertheless be entitled to a writ of habeas corpus upon a proper showing. Thus in Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369, the Supreme Court reversed the court below, and directed a

413

414

writ of habeas corpus to issue upon an application made by a Chinese person who alleged that he was a citizen of the United States and detained unlawfully under a decision or order made by the commissioner of immigration at the port of San Francisco after a hearing, which decision had been affirmed by the Department of Commerce and Labor. But in that case the petitioner alleged that he had been prevented by the officials of the commissioner from obtaining testimony, and that if he had been given a proper opportunity he could have produced overwhelming evidence that he had been born in the United States and had departed to China on a temporary visit. The court in its opinion said:

" 'The decision of the department is final, but that is on the presupposition that the decision was after a hearing in good faith, however summary in form. As between the substantive right of citizens to enter and of persons alleging themselves to be citizens to have a chance to prove their allegation on the one side and the conclusiveness of the commissioner's fiat on the other, when one or the other must give way, the latter must yield.'

"And in directing the writ to issue Mr. Justice Holmes said:

" 'The courts must deal with the matter somehow, and there seems to be no way so convenient as a trial of the merits before the judge. If the petitioner proves his citizenship, a longer restraint would be illegal. * * * But unless and until it is proved to the satisfaction of the judge that a hearing properly so called was denied, the merits of the case are not open and, we may add, the denial of a hearing cannot be established by proving that the decision was wrong.'

"There can be no doubt, therefore, that under the Conscription Act [50 U.S.C.A. Appendix § 201 et seq.], *where a board has denied a full and fair hearing to an individual claiming exemption from military service, he might, if restrained of his liberty, sue out a writ of habeas corpus and obtain his liberty.*" Angelus v. Sullivan, 2 Cir., 246 F. 54, 63, 64. (Emphasis added.)

Note, that the Court says "if restrained of his liberty". They do not say "if restrained of his liberty, *upon induction.*" Here is a man who claims that his constitutional rights have been violated, in being denied due process. And yet, under the Government's contention, he would be denied the opportunity to question the arbitrariness *now.* Assume that there is merit to his contention, the Government would, nevertheless, put him to the expense of a trial, *in which he could not raise the question.* See: United States v. Grieme, 3 Cir., 1942, 128 F.2d 811, 814; Fletcher v. United States, 5 Cir., 1942, 129 F.2d 262.

Suppose he stands convicted. Would he be in a better position to raise the question whether he was legally inducted by suing out a writ against the warden of the penitentiary? Most certainly not. Then, why should he wait? The only real question here is: Is the petitioner being deprived of his liberty by virtue of the action of the Board? The answer is, Yes, because he has been arrested for failure to obey the order of the Board. And he does not have to wait until he has been convicted before challenging that order. One *may* raise the question of due process after conviction. But one *need not* wait until then.

It is true that, in some of the cases arising under the present law, the writ was directed to the Commanding Officer. But I find nothing in those cases which teaches that a person must suffer induction before he can invoke the writ. The scope of judicial review is the same, when a selectee has been prosecuted criminally, after his refusal to be inducted, as when he has deserted, after induction. In each case, the inquiry relates back to the legality of the induction.

In other words, my view is that, if an inductee is restrained of his liberty, in consequence of what he alleges to be the arbitrary action of a Selective Service Board, *no matter at what stage he is restrained,* he may, by writ of habeas corpus, question whether there was evidence to sustain the action of the Board. He does not have to wait until he is inducted, and direct his writ to the Commanding Officer. Nor does he have to risk conviction, desertion or courtmartial. When he is deprived of his liberty, as he is here, by being arrested and committed, upon a complaint, which charges him with failure to present himself for induction, he need not wait for a grand jury indictment and subsequent trial and conviction. He may come at once before the Court and say: "I have surrendered to the Marshal. I desire to attack his authority to hold me, by attacking the Board's order which precedes the complaint, and on which the commitment was issued.", and have his challenge determined, just as in the Ver Mehren case, supra, the petitioner was permitted to do, after he had been in a military prison and had escaped.

This position is logical and in harmony with the spirit of our constitutional freedom. As the Government concedes that the actions of Selective Service Boards are subject to review by writ of habeas corpus, the only question is: At what stage must the writ be instituted? I answer: Whenever the inductee is restrained in his liberty. It is, therefore, my opinion that the writ lies at this stage.

A final word: When winds of doctrine are afield, which would deny constitutional guarantees, without even the requisite legislative or executive intervention based on war necessity, it is well to give heed to the eloquent words of Mr. Justice Davis in Ex parte Milligan, 1866, 4 Wall. 2, 120, 18 L. Ed. 281:

"The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism, but the theory of necessity on which it is based is false; for the government, within the Constitution, has all the powers granted to it, which are necessary to preserve its existence; as has been happily proved by the result of the great effort to throw off its just authority". Ex Parte Milligan, 4 Wall. 2, 120, 18 L.Ed. 281.

To deny the writ until graver consequences to the petitioner's freedom of person have flown from further *enforced* acts of disobedience, is to disregard the force of this warning. This, I decline to do. The motion to dismiss will, therefore, be denied. Exception to the Government.