**HURSE v. CAFFEY, Brigadier General, U. S. Army.**

No. 1464.

District Court, N. D. Texas, Dallas Division.

March 13, 1945.

D. M. Grant, of St. Louis, Mo., and C. B. Bunkley and W. J. Durham, both of Dallas, Tex., for petitioner.

Clyde G. Hood, Asst. U. S. Atty., of Dallas, Tex., Frank B. Potter, Asst. U. S. Atty., of Fort Worth, Tex., A. W. Christian, Asst. U. S. Atty., and Lieutenant George Red, Eighth Army Regional Board, both of Dallas, Tex., Colonel W. J. Hughes, Jr., of Washington, D. C., Colonel John J. Honan, of Fort Sam Houston, Tex., and Lieutenant-Colonel Kirk R. Mallory, of Camp Bowie, Tex., for respondent.

ATWELL, District Judge.

This proceeding raises the question of alleged irregularities in the court-martial which sentenced the prisoner to death. The application seems to support the idea that certain qualified officers were called to sit on the court. That those officers, after having heard the testimony and other appropriate suggestions of counsel and interested parties, retired to consider the verdict and returned a verdict which recited that "a two-thirds majority" of the members of the court voted guilty. Later the court was reconvened and the punishment was fixed at death.

The reviewing authorities in Washington returned it to the court for what they considered an appropriate verdict; being under the impression that a sentence of death could not follow a "two-thirds majority" verdict.

Thereupon, the court was reassembled. At this meeting all of the members of the original court were not present. There were five absentees. The court, without those absentees, returned a corrected verdict showing that the original verdict was the result of an unanimous vote of all of the members of the court. The verdict as thus rendered was approved by the Washington authorities and by the President, and, the prisoner awaits death by hanging.

The petitioner takes the position that since the first verdict showed that a *majority* voted guilty a death penalty could not be assessed, and that there was, therefore, an acquittal of the offense of death penalty murder.

Sec. 1508, Title 10, U.S.C.A., provides that "the proceedings of a court-martial

shall not be held invalid, nor the findings or sentence disapproved, in any case on the ground of improper admission or rejection of evidence nor for any error as to any matter of pleading or procedure, unless in the opinion of the reviewing or confirming authority, after an examination of the entire proceedings, it shall appear that the error complained of has injuriously affected the substantial rights of the accused."

Sec. 1514 of the same title and volume, U.S.C.A., relates to the death sentence and requires an *unanimous* finding before the death sentence can be imposed for certain offenses.

Sec. 1511 of the same volume protects from a second trial for the same offense, but provides that "no proceeding in which an accused has been found guilty * * * shall be held to be a trial in the sense of this article until the reviewing and, if there be one, the confirming authority shall have taken final action upon the case."

So that the law seems to contemplate the review by the War Department as a part of the trial. The War Department in the instant case thought that the verdict which found the petitioner guilty of murder and later assessed the punishment of death, must have a finding of unanimity by the court-martial as to guilt.

Therefore, it is quite possible that the reviewing authority had the power to require that the court be recalled for the purpose of correcting the alleged irregularity in the sentence.

The Circuit Court of Appeals for the Fourth Circuit, speaking through presiding Justice Parker, in the case of Stout v. Hancock, 146 F.2d 741, 743, the lower court opinion being, Hancock v. Stout, D.C., 55 F.Supp. 330, said,

"The purposes of the amendment of 1920, which put the 43d article of war in its present form, were to require a unanimous vote to inflict the death penalty or to convict where the death penalty was mandatory, to require a three-fourths vote to inflict life imprisonment or imprisonment for more than ten years and to require a two-thirds vote for conviction in cases where the death sentence was not mandatory; and Congress made only such changes in the 43d article as were necessary to accomplish these purposes. A comparison of the article as amended with the original form will show this very clearly, and for convenience the article as amended is here reproduced, italics being used to show language added by the amendment and parentheses to show what has been omitted:

" 'No person shall, by general court-martial, be convicted of an offense for which the death penalty is made mandatory by law, nor sentenced to suffer death, except by the concurrence of *all the members* (two-thirds of the members) of said court-martial *present at the time the vote is taken* and for an offense in these articles expressly made punishable by death; *nor sentenced to life imprisonment nor to confinement for more than ten years, except by the concurrence of three-fourths of all of the members present at the time the vote is taken.* All other convictions and sentences, whether by general or special court-martial, may be determined by *a two-thirds vote of those members present at the time the vote is taken.* (A majority of the members present.) *All other questions shall be determined by a majority vote.'* "

Simplifying, somewhat, he supports the theory that all cases in which the death penalty *may* be inflicted is different from the infliction where the death penalty is made *mandatory.* That murder is not such a mandatory offense. Murder may be punished by death *or* by imprisonment.

Conceding the accuracy of Judge Parker's thinking, we have an offense here which did not mandatorily carry the death penalty. If that is a fact, and it seems to be, two-thirds of the court-martial present at the time the vote was taken on the question of guilt or innocence is all that was necessary. But *all* of the members present at the time the vote is taken must concur in the death penalty before it can be imposed. In Judge Parker's opinion, Article of War 346 is cited, which reads as follows: "346. Death Penalty.—No person shall, by general court-martial, be convicted of an offense for which the death penalty is made mandatory by law, nor sentenced to suffer death, except by the concurrence of all of the members of said court-martial present at the time the vote is taken. Where the death penalty is not mandatory but is discretionary, a conviction may be determined by a two-thirds vote of those members present at the time the vote is taken; but all of the members present at the time the vote is taken on the sentence, must concur in imposing the death sentence."

It is pointed out that there is an apparent inconsistency in permitting a con-

viction on a two-thirds vote for a crime which *must* be punished by death or life imprisonment under Article 92, 10 U.S.C.A. § 1564, and at the same time requiring an unanimous vote to impose the sentence of death and a three-fourths vote to impose the sentence of life imprisonment; but the inconsistency is more apparent than real because conviction and sentence are two separate steps in a court-martial proceeding, and after conviction has been voted in a prosecution for murder, the only punishment permissible under the law is death *or* imprisonment. The vote on imprisonment, therefore, is but a choice between those two; and unless there is an unanimous vote in favor of the death penalty, imprisonment necessarily follows.

■ The question is still left open as to whether, upon the correction of the verdict in accordance with the suggestion of the reviewing authority, the absence of five members of the original court who passed upon the case, made, what was subsequently done, a useless something. In other words, whether the verdict is still one that does not justify the punishment of death.

In civil courts, the appellate, or reviewing court, does not liberate the convicted defendant because the lower court erred in wording the judgment or the sentence. The reviewing court merely sets aside the sentence and remands the cause for the imposition of a correct sentence by the trial court. A very sensible practice.

The statutes quoted above seem to indicate that the reviewing authority had the power to require the trial court to correct an irregular and improperly worded sentence. It would seem that it still has that power.

It cannot be said that the prisoner is being illegally held. He is being legally held. He has been found guilty of murder. The wording of the verdict is said to be merely an erroneous wording. The reviewing authority which is a part of the court, according to the statute, ordered the error corrected.

■ Just what steps should or shall be taken if and when it appears that the original court cannot be assembled for the correction of its verdict is another matter. It is not appropriate for this court to anticipate the presentment of that feature at this time. Autrefois acquit is a defense that may then be urged and considered. Sanford v. Robbins, 5 Cir., 115 F.2d 435. Title 10, U.S.C.A. § 1522, reviewed:—A court-martial proceeding is subject to review by civil courts only to ascertain jurisdiction and whether it has exceeded its power in the sentence pronounced. United States v. Bullard, 2 Cir., 290 F. 704; Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876. But if Stout v. Hancock is the law, there is no irregularity.

Section 1522 gives a rather lengthy detail of the review, mentioned above, the approval thereafter, by the President, and when and how a rehearing may be ordered. Such rehearing may take place before a court composed of officers not members of the court which first heard the case. But, upon such rehearing the accused shall not be tried for any offense of which he was found not guilty by the first court. The section also deals with a "rehearing shall be had in all cases where a finding and sentence have been vacated by reason of the action of the board of review * * * holding the record of trial legally insufficient to support the findings or sentence or that errors of law have been committed injuriously affecting the substantial rights of the accused, unless, in accord with such action, and the recommendations of the Judge Advocate General thereon, the findings or sentence are approved in part only, or the record is returned for revision * * *."

After any such rehearing the record of trial shall be again examined by the Board of Review and transmitted by the J. A. G. with the Board's opinion and his recommendations, to the Secretary of War for the action of the President.

The petitioner is remanded to the custody of the respondent.