## ROSBOROUGH v. ROSSELL.

No. 4051.

Circuit Court of Appeals, First Circuit.

July 26, 1945.

Charles R. Pierce and S. Wallace Dempsey, both of Washington, D. C., for appellant.

Tom C. Clark, Asst. Atty. Gen., David Reich, Atty., Department of Justice, of Washington, D. C. (John D. Clifford, Jr., U. S. Atty., and Edward J. Harrigan, Asst. U. S. Atty., both of Portland, Me., T. L. Gatch, Rear Admiral, U. S. Navy, Judge Advocate General of Navy and Hugh J. McGrath, Atty., Office of Judge Advocate General, U. S. Navy Department, both of Washington, D. C., of counsel), for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Appellant Samuel A. Rosborough appeals from a decree denying a petition for a writ of habeas corpus. The case was heard below upon the petition and respondent's return to an order to show cause, and the facts are not in controversy.

Rosborough enlisted in the United States Navy in January, 1942, for a period of six years. He was assigned to the United States Armed Guard Center, Brooklyn, N. Y. Later, he was on detached duty as a member of an armed guard crew, under command of an officer of the United States Naval Reserve, on board the motor ship Baltic, an oil tanker under registry of, and flying the flag of, the Republic of Panama. On June 30, 1942, while the Baltic was moored at dock at Montevideo, Uruguay, Rosborough began firing a machine gun mounted on a tripod on the bridge. He was drunk at the time. While members of the crew sought to grab him, a bullet struck and killed the Chief Officer of the Baltic, a civilian, one Ernest F. Backus. Rosborough was arrested by the local police, but later, upon request, was released to the custody and jurisdiction of the United States Navy.

The Acting Secretary of the Navy on September 28, 1942, directed that Rosborough be brought to trial before a general court-martial convened at the United

States Navy Yard, New York, N. Y., upon the following charge and specification:

## "Charge

## Murder

### Specification

In that Samuel A. Rosborough, seaman second class, U. S. Navy, while so serving at the U. S. armed guard center, Brooklyn, New York, and while on detached duty as a member of the armed guard crew on board the motor ship Baltic, did, on or about June 30, 1942, on board said ship, then at Montevideo, Uruguay, wilfully, feloniously, with malice aforethought, and without justifiable cause, assault, shoot at, and strike with about eleven bullets, exact number to the relator unknown, fired by him, the said Rosborough, from a deadly weapon, to wit, from a loaded thirty caliber machine gun, one Ernest F. Backus, chief officer of said ship, and did therein and thereby then and there inflict mortal wounds in and upon the chest of the said Backus, of which said mortal wounds so inflicted as aforesaid, the said Backus died at or about 12:45 a. m. on said date, on board said ship; the United States then being in a state of war."

When the court-martial convened on November 4, 1942, counsel for the accused at the outset objected to its jurisdiction over the offense charged. The objection was overruled, and the case proceeded to trial.

At the conclusion of the trial, the court-martial recorded the following findings:

"The specification of the charge proved in part, proved except the words 'with malice aforethought' which words are not proved.

"And that the accused, Samuel A. Rosborough, seaman second class, U. S. Navy, is of the charge guilty in a less degree than charged, guilty of voluntary manslaughter."

Sentence was pronounced in the following terms: "The court, therefore, sentences him, Samuel A. Rosborough, seaman second class, U. S. Navy, to be reduced to the rating of apprentice seaman, to be confined for a period of twenty (20) years, then to be dishonorably discharged from the United States naval service, and to suffer all the other accessories of said sentence as prescribed by section 622, Naval Courts and Boards."

On September 4, 1943, the Acting Secretary of the Navy approved the proceedings, findings, and sentence, except that "so much of the period of confinement adjudged, with corresponding accessories, in excess of ten (10) years, is set aside." Pursuant to such sentence as mitigated, Rosborough is now being held in confinement by respondent, Colonel James A. Rossell, U.S.M.C., in his capacity as Officer-in-Charge of the Naval Prison, Portsmouth Navy Yard, Kittery, Maine.

The petition for a writ of habeas corpus is based upon the contention that the sentence under which Rosborough is being held is void, because, under the circumstances recited in the petition, the court-martial lacked jurisdiction over the offense charged, i.e., murder, and the single specification thereunder.

Naval courts-martial are courts of special and limited jurisdiction, as conferred by Act of Congress. The case turns upon the proper interpretation of certain of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, as follows:

"* * * Article 6. Murder.

"If any person belonging to any public vessel of the United States commits the crime of murder without the territorial jurisdiction thereof, he may be tried by court-martial and punished with death.

 * * * * *

"Article 22. (a) Offenses not specified.

"All offenses committed by persons belonging to the Navy which are not specified in the foregoing articles shall be punished as a court-martial may direct.

 * * * * *

"Article 50. Sentences, how determined.

"No person shall be sentenced by a court martial to suffer death, except by the concurrence of two-thirds of the members present, and in the cases where such punishment is expressly provided in these articles. All other sentences may be determined by a majority of votes."

 * * * * *

Respondent urges the view that the jurisdiction of the Navy extends to every act and offense committed by a member of the Navy which may bring disgrace upon the service, and that this jurisdiction is based not upon any territorial principle, but upon the authority of the Navy over its members. But while Congress

may well have constitutional power to confer such plenary jurisdiction upon naval courts-martial on this broad principle, it remains to inquire whether Congress has done so. Article 22(a), above quoted, contains no such sweeping grant. As the Attorney General ruled many years ago: "This article cannot be interpreted as intending to give to a court-martial general criminal jurisdiction, but only jurisdiction over those offenses not specified by name, which are injurious to the order and discipline of the Navy, and this jurisdiction is given for the purpose of preserving that order and discipline." 1880, 16 Op. Atty. Gen. 578, 580. In Smith v. Whitney, 1886, 116 U.S. 167, 183, 6 S.Ct. 570, 578, 29 L.Ed. 601, the court pointed out that this article "applies only to offences 'not specified in the foregoing articles,' * * * leaving within the jurisdiction of courts martial cases not so specified, but recognized as military offences by the usages of the naval service."[1]

■ It follows that where any specific offense is enumerated in one of "the foregoing articles", the jurisdiction of the court-martial must rest, not upon the general article 22(a), but upon the specific article, and must be subject to any limitations expressed in such specific article with reference to the offense in question. Since the offense of murder is specified in a preceding article (article 6), the natural conclusion would be that the jurisdiction of a court-martial over that offense must be determined by the provisions of article 6 rather than article 22(a).

To escape this conclusion, respondent argues that article 6 does not deal comprehensively with the offense of murder, but only with certain types of murder carrying the death penalty, namely, murders committed outside the territorial jurisdiction of the United States by a person belonging to any public vessel of the United States; and that, since article 6 does not specify any punishment for murders committed by naval personnel within the territorial jurisdiction of the United States, or for murders, wherever committed, by naval personnel who do not belong to any public vessel of the United States, a charge of murder in such cases will lie under the general provision of article 22(a), with the limitation that the death penalty cannot be imposed because article 22(a) does not so provide (see article 50).

To us the foregoing seems a strange construction of the governing act. Its acceptance would result in obvious incongruities. Thus, a person belonging to a public vessel of the United States who commits a murder on the high seas might be punished with death by a naval court-martial, but if the same offense, however heinous, were committed in Boston Harbor, a court-martial, though having jurisdiction of the offense, might not impose the extreme penalty. Or, again, if two members of the Navy, one belonging to a public vessel of the United States and the other not so belonging, should combine to commit a murder in a foreign port, a naval court-martial could try both for murder but could sentence only the first one to death.

■ We think the qualifications in article 6 are not to be read as specifying certain "types of murder" but rather as limiting the jurisdiction of naval courts-martial over the offense of murder. Murder is murder by whomever or wherever committed. This is indeed recognized in Naval Courts and Boards (1937), issued by the Secretary of the Navy, with the approval of the President, for the government of all persons attached to the naval service. In section 53 of that official publication it is stated: .

"53. Murder.—This is provided for in the 6th A.G.N. It must have been committed by a person belonging to a public vessel of the United States and outside of the territorial jurisdiction thereof.

"Charge: Murder.

"Elements: Murder is the unlawful killing of a human being with malice aforethought."

That these limitations upon court-martial jurisdiction over the crime of murder were deliberately imposed by Congress is indicated by the history of the Articles for the Government of the Navy, first enacted in 1799. The successive versions of the present articles 6 and 22, as they evolved

---

[1] The dictum in Carter v. McClaughry, 1902, 183 U.S. 365, 397, 22 S.Ct. 181, 46 L.Ed. 236, suggesting a broad interpretation of article 62 (now 96, 10 U.S.C.A. § 1568) of the Articles of War (the "catch-all" article corresponding to article 22(a) of the Articles for the Government of the Navy) is not in point because of the significantly different phraseology of the two articles.

from 1799 on, are given below in parallel columns:

| Left column | Right column |
|---|---|
| 1 Stat. 712 (1799): "29. All murder shall be punished with death." | 1 Stat. 713 (1799): "46. All faults, disorders and misdemeanors which shall be committed on board any ship belonging to the United States, and which are not herein mentioned, shall be punished according to the laws and customs in such cases at sea." |
| 2 Stat. 48 (1800): "Art. XXI. The crime of murder, when committed by any officer, seaman, or marine, belonging to any public ship or vessel of the United States, without the territorial jurisdiction of the same, may be punished with death by the sentence of a court martial." | 2 Stat. 49 (1800): "Art. XXXII. All crimes committed by persons belonging to the navy, which are not specified in the foregoing articles, shall be punished according to the laws and customs in such cases at sea." |
| 12 Stat. 602 (1862): "Article 5. The crime of murder, when committed by an officer, seaman, marine, or other person belonging to any public ship or vessel of the United States, without the territorial jurisdiction of the same, may be punished with death by the sentence of a court-martial." | 12 Stat. 603 (1862): "Article 8. All offences committed by persons belonging to the navy, which are not specified in the foregoing articles, shall be punished as a court-martial shall direct; but in no case shall punishment by flogging be inflicted, nor shall any court-martial adjudge punishment by flogging." |
| Rev. Stat. § 1624 (1873): "Art. 6. If any person belonging to any public vessel of the United States commits the crime of murder without the territorial jurisdiction thereof, he may be tried by court-martial and punished with death." | Rev. Stat. § 1624 (1873): "Art. 22. All offenses committed by persons belonging to the Navy which are not specified in the foregoing articles shall be punished as a court-martial may direct." |
| 34 U.S.C.A. § 1200: "Article 6. Murder. "If any person belonging to any public vessel of the United States commits the crime of murder without the territorial jurisdiction thereof, he may be tried by court-martial and punished with death." | 34 U.S.C.A. § 1200: "Article 22. (a) Offenses not specified. "All offenses committed by persons belonging to the Navy which are not specified in the foregoing articles shall be punished as a court-martial may direct. * * *" |

In 1799 Congress provided that "All murder shall be punished with death."[2] Obviously, the crime of murder was then in no instance covered by article 46, the general article corresponding to the present article 22(a). The very next year (1800), Congress made extensive revisions of the articles. For some reason undisclosed, Congress introduced into the specific murder article the two limitations which have since been retained in all the subsequent revisions. If respondent's theory were correct, the effect of what Congress did in 1800 would have been to provide the death penalty for certain "types of murder" embraced in article XXI, and to cover other murders by article XXXII, the general "catch-all" article. But if such were the intention, Congress surely chose a curious and obscure way to express it. Furthermore, if a murder committed in an American port were assumed to be covered by the general article XXXII of the 1800 version, what was the penalty provided? The article says that crimes covered by it "shall be punished according to the laws

---

[2] By sentence of a court-martial, of course. In article 4 (1 Stat. 709), it was provided that no commander, for any one offense, might inflict any punishment upon a seaman or marine beyond twelve lashes upon his bare back—"if the fault shall deserve a greater punishment, he is to apply to the Secretary of the Navy, the commander in chief of the navy, or the commander of a squadron, in order to the trying of him by a court martial; * * *."

and customs in such cases at sea"—which, in the case of murder, presumably meant the death penalty.[3] The change by the revision of the specific murder article in 1800 would thus apparently have been zero, on respondent's theory.

But early interpretations of the articles as revised in 1800 belie respondent's view that all murders not covered by the specific murder article were covered by the general article. Thus, in 1812, 5 Op. Atty. Gen. 698, the Attorney General ruled that a naval court-martial could not try an accused for a murder alleged to have been committed on board a frigate at Norfolk, Va., "but that jurisdiction in the case belongs to the ordinary civil tribunal." In United States v. Bevans, 1818, 3 Wheat. 336, at note (a) on page 391, 4 L.Ed. 404, it is stated, referring to an alleged murder committed on board a man-of-war in Boston Harbor, that "the case at bar was not cognizable by a navy court-martial, being committed within the territorial jurisdiction of the United States." In Maltby, A Treatise on Courts Martial and Military Law (1813), referring only to article XXI of the 1800 version, the author states, "For murder—punishment is death by sentence of court martial", not suggesting that courts-martial would also have jurisdiction over some "types of murder" under the general article XXXII.

 At this point it is appropriate to examine more narrowly the limitations introduced into the specific murder article by the 1800 revision and carried without substantial change in all succeeding versions. One limitation, that the murder must have been committed "without the territorial jurisdiction" of the United States, need not detain us now. The other limitation was that the murder must have been committed "by any officer, seaman, or marine, belonging to any public ship or vessel of the United States." The phrase "belonging to" a public vessel is not defined, but it evidently is in some sense restrictive so as not to cover all naval personnel, in contrast with the general article of the 1800 and subsequent versions, all of which refer to crimes or offenses "committed by persons belonging to the navy."[4] If a person "belongs" to a public vessel within the meaning of the specific article, he need not commit the murder on the high seas, or even on board ship, to be subject to trial by court-martial under the specific article; the crime may be committed anywhere, so long as it is committed "without the territorial jurisdiction" of the United States. So far as concerns the place of the alleged offense, Rosborough could have been tried by court-martial under article 6 even if he had killed Backus on shore in Montevideo, Uruguay, if Rosborough had "belonged" to a public vessel of the United States. Thus, if Rosborough had been regularly assigned to a naval vessel but was on "detached duty"

---

[3] It was not until the enactment of the Revised Statutes in 1873 that Congress made the specific provision, in article 50, that "No person shall be sentenced by a court-martial to suffer death, except by the concurrence of two-thirds of the members present, *and in the cases where such punishment is expressly provided in these articles.* * * *" (Italics ours.)

[4] We have been unable to find in the Library of Congress, or elsewhere, any legislative materials giving a clue to what Congress had in mind by the phrase "belonging to" a public vessel, inserted in the murder article by the revision of 1800. It appears from the Journals of the two Houses that the bill was amended, both in the House and Senate, but the text of the bill as introduced, and the texts of the various amendments, are not to be found. There is nothing in the Annals of Congress preserving any of the debate or discussion on the meaning or purpose of the murder article. It occurred to us that possibly the phrase "belonging to" a public vessel was merely inadvertent draftsmanship which meant no more than that the person accused must belong to the Navy. If that were the meaning, of course Rosborough could have been tried for murder under article 6, but respondent concedes that this could not have been done. As a matter of fact, in the 1800 Act, in article after article Congress referred to "any person in the navy" or, as in article XXXII, "persons belonging to the navy". Yet in this one article dealing specifically with the crime of murder, Congress used a wholly different phrase, "any officer, seaman, or marine, belonging to any public ship or vessel of the United States". That differentiation in phraseology has been maintained throughout the successive revisions. It would be contrary to the ordinary rules of statutory construction to say that any person "belonging to any public ship or vessel" means no more than "any person in the navy" or any person "belonging to the navy".

as a member of the Navy gun crew on a merchant ship of Panamanian registry, he might perhaps have been regarded as "belonging to any public vessel of the United States" within the meaning of article 6. But according to the record, Rosborough's permanent station was at the United States Armed Guard Center, Brooklyn, N. Y. We are relieved of the necessity of defining more precisely what is meant by "belonging to" a public vessel because of the concession in respondent's brief: "We agree that there would have been no basis for framing a charge against appellant under Article 6, since the Baltic was a ship of Panamanian registry, flying the flag of the Republic of Panama. But the charge was not predicated on that Article. Authority for the charge is found in Article 22(a)."[5]

If respondent's theory of the case were correct, a member of the Navy might be tried for murder under the general article 22(a) whenever the accused could not be charged with murder under article 6 because of the limitations expressed in the latter article. There is no possible ground for taking a distinction between the two limitations so as to arrive at the conclusion that a court-martial has no jurisdiction under article 22(a) of a murder committed within the territorial jurisdiction of the United States, but does have jurisdiction under article 22(a) when the murder is committed without the territorial jurisdiction of the United States by a member of the Navy not "belonging to any public vessel of the United States".

The official publications of the Navy have consistently stated for the guidance of the service that a naval court-martial has no jurisdiction of a charge of murder alleged to have been committed within the territorial jurisdiction of the United States:

Thus, in the Naval Digest (1916), pp. 392, 393, reference is made to a case where the accused killed another enlisted man on board a naval vessel at the navy yard, Philadelphia, Pa. It is stated that the Attorney General advised that the accused be tried by a naval court-martial for manslaughter, and the comment is added: "The above man could not be tried by naval court-martial for 'Murder' as a general court-martial would not have had jurisdiction of that offense."

In the first edition of Naval Courts and Boards (1917), it is stated in section 73 that when the charge is murder, the specification must state the location of the ship on board which the crime has been committed "in order that the trial and punishment of this offense may come within the provisions of article 6 of the Articles for the Government of the Navy, giving a court-martial jurisdiction over this offense only when committed without the territorial limits of the United States." In the same publication, at p. 113, giving a sample charge of murder and specification thereunder, there is a note stating: "See article 6 of the Articles for the Government of the Navy, which has been construed as restricting the jurisdiction of the naval general court-martial over the crime of murder to cases where this offense is committed without the territorial jurisdiction of the United States." At pp. 218 ff. is given a table listing a great number of offenses, each under the appropriate article, with the maximum limit of punishment for each enumerated offense. The crime of murder is listed only under article 6, with the punishment stated to be death. Thirty-odd offenses are listed under article 22, including manslaughter, but not murder.

Naval Courts and Boards (1923 Ed.), section 226, reads: "Murder.—This is provided for in the 6th A.G.N. It must have been committed by a person belonging to a public vessel of the United States and outside of the territorial jurisdiction thereof." In section 646, several pleas to the jurisdiction are listed, including one "That the offense is not one cognizable by naval court-martial". A footnote thereto refers back to section 561 which, after quoting article 6, A.G.N., states: "This precludes a court-martial taking jurisdiction of murder committed within the territorial jurisdiction of the United States." In section

---

[5] In conformity with the practice in the Navy, the formal charges against Rosborough do not contain any reference to the particular article of the Articles for the Government of the Navy upon which the charges are based. As stated in Naval Courts and Boards (1937), section 27: "It is not essential to state in a specification that an offense was committed in breach of any Federal statute, article of the articles for the government of the Navy, law of the State in which the court is sitting, or general regulation, as the court takes judicial notice of such statute, article, State law, or regulation, under which the charge is laid, * * *."

720, giving the schedule of offenses and limitations on punishment, murder is listed under article 6, as in the earlier edition. Under article 22, after the enumeration of a number of offenses, occurs the general statement: "Any offense in the act of Congress approved Mar. 4, 1909 (35 Stat. 1088 [18 U.S.C.A. § 1 et seq.]), entitled 'An Act to codify, revise, and amend the penal laws of the United States,' or in any other general statute of the United States, which is not specified in the Articles for the Government of the Navy". To this is appended a footnote enumerating a long list of crimes "deemed most likely to occur in the Navy and the maximum period of imprisonment, or, where no imprisonment is authorized, the maximum fine, that may be adjudged therefor." The list includes manslaughter and rape but, significantly enough, not murder. Over the list of offenses in which manslaughter is included occurs the caption, "Any offense given below committed by a person in the Navy is within the jurisdiction of a court-martial". At that point reference back is made to section 556 which states: "The jurisdiction of a naval court-martial, except for the offense of murder, extends not only to every part of the United States but also covers all offenses of which it is authorized to take cognizance committed by persons in the Navy; whether within or beyond such territorial limits."

Naval Courts and Boards (1937 Ed.) states in section 53: "Murder.—This is provided for in the 6th A.G.N. It must have been committed by a person belonging' to a public vessel of the United States and outside of the territorial jurisdiction thereof." In section 336, under the heading, "Limitation of jurisdiction over crime of murder", after quoting article 6 A.G.N., it is stated: "This precludes a court martial taking jurisdiction of murder within the territorial jurisdiction of the United States. If the crime is committed on the high seas or within a foreign country there is no doubt that courts martial having assumed jurisdiction thereof may proceed to a final judgment."[6] Section 457, giving the schedule of offenses and limitations of punishment, is substantially the same as the cor-

responding section of the 1923 edition; murder is listed only under article 6.[7]

In what we deem to be an ineffective effort to break the force of the foregoing departmental interpretations, respondent in his brief sets forth the summaries of several naval general court-martial records, in which it appears that the department upheld court-martial convictions for murder committed at various points outside the jurisdiction of the United States. In some of these cases, a fuller statement of the facts m·ght perhaps reveal that the accused came within the requirement of "belonging to any public vessel of the United States". In others, if the accused did not "belong" to a public vessel, the jurisdictional point may not have been raised, and may have escaped the eye of the reviewing authorities. At best, these cases would only show that in a few instances, which did not get into the courts on habeas corpus, naval personnel were wrongfully committed of murder by courts-martial lacking jurisdiction of the offense.

■ Our conclusion, on this branch of the case, is that the court-martial had no jurisdiction of the offense for which Rosborough was tried, namely, murder. We need not invoke the old canon of construction that penal laws are to be construed strictly. It is enough to say that they should not receive a strained construction in order to sustain the jurisdiction of a special and limited tribunal such as a court-martial. The natural reading of the present Articles for the Government of the Navy, their legislative evolution, the interpretation put upon them by the official publications of the Navy, all combine to sustain the conclusion we have reached. If, as counsel for respondent suggested at the argument, the articles need revision, it is nevertheless true that we must apply the statute as it now stands. .

■ A subordinate contention by respondent has given us some pause. Assuming that the court-martial did not have jurisdiction of the charge of murder, upon which Rosborough went to trial, respondent points out that the court-martial convicted ·Rosborough only of

---

6 The sentence just quoted must be taken as subject to the other qualification contained in article 6 that the accused must belong to a public vessel of the United States.

7 Counsel for petitioner, in his reply brief, states that the District Judge "did not have a copy of 'Naval Courts and Boards' before him in adjudicating this case."

manslaughter. It is unquestioned that Rosborough could have been separately charged with manslaughter under article 22(a). And we think it is probably true that, if the court-martial had had jurisdiction of the charge of murder, it could properly have convicted Rosborough of the lesser included offense of manslaughter. See Dynes v. Hoover, 1857, 20 How. 65, 79, 80, 15 L.Ed. 838; Givens v. Zerbst, 1921, 255 U.S. 11, 41 S.Ct. 227, 65 L.Ed. 475; United States v. Mackenzie, D.C.N.Y., 30 Fed.Cas. page 1160, No. 18,313. Naval Courts and Boards (1937 Ed.), in section 53, enumerates manslaughter as one of the lesser included offenses under the charge of murder; and section 430 provides that, if the evidence should prove the commission of an offense less in degree than that specified, yet included in it, "the court may except words of the specification, substitute others, pronounce what words are not proved and what words are proved, and then find the accused guilty in a less degree than charged, guilty of the lesser included offense." Such has been the naval practice. Naval Digest (1916) p. 391, par. 12.

But if, as we have ruled here, the court-martial did not have jurisdiction of the charge upon which Rosborough was brought to trial, we think, contrary to respondent's contention, that the whole case was coram non judice and that the jurisdictional defect was not cured by the subsequent judgment of the court-martial convicting Rosborough of manslaughter only. There is a dictum seemingly to the contrary in Ex parte Givins, D.C.Ga., 1920, 262 F. 702. The case was affirmed sub nom. Givens v. Zerbst, 1921, 255 U.S. 11, 41 S.Ct. 227, 65 L.Ed. 475, but on the ground that the court-martial in the circumstances stated had jurisdiction to try the charge of murder. "This renders it unnecessary", the court said, 255 U.S. at page 21, 41 S.Ct. at page 229, 65 L.Ed. 475 "to consider the Government's insistence that, as the conviction was for manslaughter, the trial was for that crime, although the charge was murder." In Dynes v. Hoover, 1857, 20 How. 65, 15 L.Ed. 838, where the court up-

held the power of a court-martial to convict a sailor of a lesser included offense of attempted desertion, the opinion laid emphasis upon the fact that the court-martial had jurisdiction over the offense charged, namely, desertion, 20 How. at pages 80, 81, 15 L.Ed. 838. The court stated that when a court-martial sentence has been confirmed by the reviewing authority, "it is altogether beyond the jurisdiction or inquiry of any civil tribunal whatever, unless it shall be in a case in which the court had not jurisdiction over the subject-matter or charge, or one in which, having jurisdiction over the subject-matter, it has failed to observe the rules prescribed by the statute for its exercise."

Rosborough might have been brought to trial on a charge of murder and specification thereunder and a separate charge of manslaughter and specification thereunder. In such a case a court-martial would have had no jurisdiction of the murder charge, but that would not have rendered the proceedings wholly void, since it would have had jurisdiction of the charge of manslaughter; hence, a finding of guilty of manslaughter only and sentence therefor would have been valid. But Rosborough was charged only with murder, and, when he objected at the outset to the jurisdiction, the court-martial should have ruled, in the view we take, that it had no jurisdiction to proceed to try the charge. It could not legally have taken the position, at that point, that though it had no jurisdiction to try Rosborough for murder, it would proceed to try him for manslaughter, because a court-martial has authority to try a man only on the charge or charges laid by the convening authority. In addition to that, the court-martial, when met by Rosborough's objection to its jurisdiction, did not proceed to try him for manslaughter; it tried him for murder, which it had no jurisdiction to do.

The decree of the District Court is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion.