UNITED STATES ex rel. HIRSHBERG v. MALANAPHY, United States Navy, Commanding Officer.

Misc. No. 1193.

District Court, E. D. New York.

Sept. 26, 1947.

Francis A. McGurk, of New York City, for relator.

J. Vincent Keogh, U.S. Atty., of New York City (Frank J. Parker, Asst. U.S. Atty., of Brooklyn, of counsel), for respondent.

GALSTON, District Judge.

The relator was convicted by a Naval General Court Martial on August 12, 1947, for offenses alleged to have been committed by him in violation of Article 8 (2) of the Articles for the Government of the Navy of the United States, 34 U.S.C.A. following section 1200, at various times from November 10, 1942, to March 1, 1944. During that period the relator was a Japanese prisoner of war in the Philippine Islands.

The Court Martial was convened by the Secretary of the Navy and sat at the Navy Yard in Brooklyn, between July 21, 1947, and August 12, 1947. On the latter date the Court Martial announced its decision, finding the relator guilty of two of the nine charges of which he was accused. Those charges are set forth in the margin.[1]

On conviction, the relator was surrendered to the custody of the respondent to await sentence. In the petition for this

---

[1] Charge 1. Maltreatment of a Person Subject to His Orders

Specification 1. In that Harold Edward Hirshberg, 223-29-64, Chief Signalman, U. S. Navy, while so serving with the U. S. Naval Forces, in the Far East area, and having been captured and made a prisoner of war by the Japanese, and while so serving in the status of prisoner of war in the custody of the Japanese at a prisoner of war camp at Nielson Field, Luzon, Philippine Islands, and while serving as a petty officer in charge of a work section at said war camp, pursuant to appointment by the Japanese authorities thereof, did, on or about 1 June 1943, while on duty as a petty officer in charge of a work section at said war camp, wilfully and without justifiable cause maltreat one George N. Gaboury, carpenter's mate first class, U. S. Navy, a prisoner of war confined at said war camp, who was attached to said work section and subject to the orders of the said Hirshberg, by assaulting and striking the said Gaboury with his closed fists many times about the head and body; the United States then being in a state of war.

"Specification 3. In that Harold Edward Hirshberg, 223-29-64, chief signalman, U. S. Navy, while so serving with the U. S. naval forces, in the Far East area, and having been captured and made a prisoner of war by the Japanese, and while so serving in the status of prisoner of war in the custody of the Japanese at a prisoner of war camp at Nielson Field, Luzon, Philippine Islands, and while serving as a petty officer in charge of a work section at said war camp pursuant to appointment by the Japanese authorities thereof, did, on or about 1 February 1943, while on duty as a petty officer in charge of a work section at said war camp, wilfully and without justifiable cause maltreat one Robert H.

writ of habeas corpus on a number of grounds the jurisdiction of the Court Martial is vigorously assailed.

The relator is presently an enlisted man in the United States Navy, of the grade of chief signal man. He was first enlisted in the Navy on March 24, 1936, and he continued in its service during re-enlistments, and was in the service of the United States Navy on or about May 6, 1942, when he was captured in the Philippine Islands by the armed forces of the Japanese nation and made a prisoner of war. Eventually he was released from the domination of the Japanese, and on September 19, 1945, he reported to the United States naval authorities for re-processing and subsistence. On midnight of March 26, 1946, his enlistment expired, at which time he received an honorable discharge, together with his mustering out pay. On the afternoon of March 27, 1946, he re-enlisted in the Navy. His arrest and trial for charges committed during the earlier enlistment followed, as has been stated, in July and August of 1947. The critical question presented is whether the charges and specifications survive the honorable discharge, and whether the relator was amenable to arrest therefor.

 The facts are not in dispute. In the course of the administration of the Philippine Islands by the Japanese Army, the relator was put in charge of a group of prisoners of war by a Japanese commander. The relator contends that at no time did he ever issue or give orders, or perform any acts or duties as personnel of the Navy of the United States, and that, therefore, his acts were those of the Imperial Japanese Army, and could not be violations of the Articles for the Government of the Navy. The relator argues that in assuming jurisdiction the Court Martial violated rights of the relator by virtue of the Hague Conventions of 1899 and 1907, and the Geneva Convention of 1929. He seems to believe that he was either a prisoner of war or a member of the Naval personnel, and that he could not be both at the same time. The fallacy is manifest, for one is not exclusive of the other. The relator certainly did not cease to be a citizen of the United States on being captured by the Japanese, and as a citizen of the United States he was certainly not a civilian, but continued to be a member of the Navy. At no time did he lose status as a member of the Navy personnel. In passing it may be said that this argument of the relator is unsupported by any authority. That is not surprising, for it is impossible to conceive of any authority which would support it. The point is sought to be bolstered by the contention that the Hague Conventions of 1899 and 1907, and the Geneva Conventions of 1929, being subsequent to the enactment of Article 8 (2) of the Articles for the Government of the Navy, 34 U.S.C.A. following Section 1200 et seq., in effect repealed the Articles for the Government of the Navy. That would be a strange result, for the Conventions referred to, though setting forth regulations for the conduct of prisoners of war, in no way relieve the service personnel from the Articles for the Government of the Navy—or of Articles of War for the Army. The treaties describing rights and obligations of prisoners of war are not in any way to be confounded with the articles for the government of the armed forces of the United States. The record of the Court Martial proceedings is not before me, but it is easily conceivable that if Hirshberg, in defense of the crimes of which he stands convicted under Article 8 of the Articles for the Government of the Navy, had a legitimate defense arising out of his adherence as a prisoner of war to the obligations imposed by the Japanese government, he doubtless could have urged such defense. Whether he did or not could not have affected the jurisdiction of the Court Martial.

 It is next urged that the relator is not within the exception in the Fifth Amendment to the Constitution, which provides for indictment by grand jury of those accused of infamous and culpable crimes "except * * * in the land or naval forces." This argument must fail too because,

Welch, coxswain, U. S. Navy, a prisoner of war confined at said war camp, who was attached to said work section and subject to the orders of the said Hirshberg, by assaulting and striking the said Welch with his closed fists; the United States then being in a state of war.

as has been found, the relator was in the naval forces of the United States at the time he committed the crimes of which he stands convicted.

Finally, however, we come to the critical issue raised by the relator; that the offenses embraced in the conviction of the relator did not survive the enlistment of the relator in the Navy on March 27, 1946, nor his honorable discharge therefrom on March 26, 1946.

The hiatus between the termination of one enlistment and the beginning of the following is so far as time is concerned very short indeed. Undoubtedly from midnight on March 26, 1946, to the afternoon of March 27, 1946, the relator acquired civilian status; but it is the contention of the respondent that in effect the two contracts merged. Such conclusion is drawn by the respondent from the affidavit of Thomas L. Sprague, Rear Admiral. The deponent there says that Hirshberg suffer no break in "entitlement to pay and allowances due him for his naval service, and he continued to be entitled to full pay and allowances as though he had not been discharged, 37 U.S.C.A. § 109 * * * (b) in counting time for longevity pay increases as provided in the Act of June 16, 1942, as amended 37 U.S.C.A. § 109; (c) in counting time for transfer to the Fleet Reserve and retirement as provided in the Naval Reserve Act of 1938 as amended, 34 U.S.C.A. § 854c; and in counting time for retirement as provided in the Act of March 3, 1899 as amended, 34 U.S.C.A. § 431."

It is to be noted that all of the grounds thus stated relate to pay and allowances. However, in respect to the obligations of enlistment, we are met with the well established principle, indeed urged by the respondent, that an enlistment in the naval service of the United States constitutes a contract. In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636. At the argument also it was conceded that if the relator had not re-enlisted, the Navy would have been powerless legally to institute the Court Martial proceedings, for the offenses charged did not survive the honorable discharge, even despite Article 61 of the Articles for the Government of the Navy. As to survival after discharge, there is a marked difference between Article 8 and Article 14, Title 34 U.S.C.A. following section 1200. The offenses covered in the latter article embrace such offenses as the presentation of false claims, agreement to obtain payment of false claims, obtaining or aiding to obtain the payment of any claim against the United States based on any false or fraudulent statement, perjury, forgery, delivering less property than receipt calls for, giving a receipt without knowing the truth thereof, stealing property of the United States furnished or intended for the military or naval service thereof; unlawful purchase of military property; any other fraud against the United States. Provision is made in such Article 14 that "if any person, being guilty of any of the offenses described in this article while in the naval service, receives his discharge * * * he shall continue to be liable to be arrested and held for trial and sentence by a court-martial, in the same manner and to the same extent as if he had not received such discharge nor been dismissed." Article 8 covers offenses which, as compared to those enumerated in Article 14, are of a minor nature, i. e. scandalous conduct, cruelty, or oppression of any person subject to the orders of a member of the service, quarreling, fomenting quarrels, duels, contempt of a superior officer, etc. After the enumeration in Article 8 of some twenty-two different kinds of offenses, there is no saving clause which parallels that of Article 14 for the trial of the offender after discharge. Nor is there any other provision in the Articles for the Government of the Navy which would confer jurisdiction on a Court Martial to review such offenses at any time after discharge, whether the offender acquired civilian status or had again enlisted in the Navy. Nor, of course, does the statute of limitations, Article 61, create jurisdiction; its function is merely to preserve a jurisdiction if it exists. To find jurisdiction, then, it must stem from some other source. This is the weakness of the respondent's position. If, as he asserts, an enlistment is a contract, so was the enlistment of the relator on March 27, 1946. The enlistment, which is an exhibit before

the court, recites that the relator was last discharged on March 26, 1946. Then follow the terms of the contract, which in effect provide that "for and in consideration of the pay or wages due to the ratings which may from time to time be assigned me during the continuance of my service, I agree to and with Robert T. Kern (Commanding Officer) of the United States Navy, as follows:

"'First: to *enter*[2] the service of the Navy * * * to report to such station * * * as I may be ordered to join, and to the utmost of my power and ability discharge my several services or duties and be in everything conformable and obedient * * * to the lawful commands of the officers who may be placed above me.

"'Second: I oblige and subject myself to serve four years from March 27, 1946 * * * on the conditions provided by the Act of Congress of March 3, 1875 [34 U.S. C.A. § 201] * * * I also oblige myself during such service to comply with and be subject to such laws, regulations and Articles for the Government of the Navy as are or shall be established by the Congress of the United States or other competent authority, and to submit etc.' "

It is unnecessary to quote or refer to any other provisions of the enlistment contract. Neither explicitly nor by implication can it be read as an extension of the contract which expired the day before.

▄▄ Moreover, the argument of the respondent that the relator merely by rendering himself subject to the jurisdiction of the Navy by re-enlistment opened the door to arrest and trial on charges relating to acts committed during the first enlistment, is supported by no judicial authority except Ex parte Joly, D.C., 290 F. 858, which will be discussed later in this opinion. Indeed the respondent admits that an honorable discharge is a formal and final judgment passed by the Government on a man's entire military record. United States v. Kelly, 15 Wall. 34, 21 L.Ed. 106; United States v. Landers, 92 U.S. 77, 23 L.Ed. 603. Naval Courts Martial are courts of special and limited jurisdiction as conferred by Act of Congress. Rosborough v. Rossell, 1 Cir.,

150 F.2d 809. In the proceeding here under consideration it must be observed that the jurisdiction assumed by the Court-Martial which tried the relator is not supported by decisions recited in Court Martial Orders of the Navy, except C. M. O. 7, 1938, which will be discussed later; and though courts are not concluded by the opinions expressed in such proceedings, nevertheless great weight must be attached thereto in conformity with recent holdings of the Supreme Court as to administrative findings of fact and conclusions of law when made by experts in the field. I refer to the following Court Martial Orders:

C. M. O. No. 22, page 7, of 1917.

C. M. O. No. 1, page 15, of 1921.

C. M. O. No. 12, page 7, of 1929, which states that except in cases of violation of Article 14 of the Articles for the Government of the Navy, there is no authority of law giving jurisdiction to a Court Martial to try an enlisted man for an offense committed in a prior enlistment from which he had an honorable discharge, regardless of the fact that he has subsequently re-enlisted in the naval service and was serving under such re-enlistment at the time the jurisdiction of the court was asserted.

To the same effect see C. M. O. No. 12, page 11, of 1921; and C. M. O. No. 6, page 11, of 1926.

Among others, and one bearing closely on the facts of the pending case, is C. M. O. No. 1, page 9, of 1926. There it appeared that one J. Bahen was convicted by General Court Martial for an offense not cognizable under Article 14. On March 31, 1925, his term of enlistment expired and he was honorably discharged. The offenses concerning which he was convicted were committed during that enlistment. On April 1, 1925, he re-enlisted for four additional years. He was brought to trial on May 22, 1925, and convicted. The conviction was set aside because the Court Martial lacked jurisdiction. It is impossible to reconcile that holding of the reviewing authority with the assumption of jurisdiction by the Court Martial in the relator's case.

However, apparently there is some lack of harmony prevailing in the opinions ex-

---

[2] Italics mine.

pressed in Court Martial Orders. In a late opinion obtained in C. M. O. No. 7, page 42, of 1938, this was said:

"An enlisted man was discharged by reason of expiration of enlistment on December 28, 1937; re-enlisted on December 29, 1937; tried on May 5, 1938, for an offense committed November 25, 1937. Held that as the accused was subject to naval law at the time of his offense and also at the time of his trial, the fact that he was in the meantime out of the naval service, is not sufficient reason for denying jurisdiction over his person and the offense with which he was charged (citing sec. 334, NC&B; CMO 22-1917, pp. 7–8; 237–1919, p. 22; 31 Op. Atty. Gen. 521–529). (File: MM-Ocheltree, Jennings F./A17–20 (380-505), Sept. 6 and 21, 1928. In this connection see also Ex parte Joly [D.C.], 290 F. 858, and G. C. M. Records Nos. 75740, 76425, 77457 and 78075.)"

█ It is to be noted that the only judicial authority relied upon to support that Court Martial Order was the reference to Ex parte Joly, D.C., 290 F. 858, 860. In that case the relator was an emergency Lieut. Colonel who was charged with various offenses between February 1920 and July 1920. On September 23, 1920 he was honorably discharged. On September 24, 1920, he was duly commissioned as a Major in the regular United States Army. The violations related to Articles 94 and 95 of the Articles of War, 10 U.S.C.A. §§ 1566, 1567, Article 95 reading: "Conduct unbecoming an officer and gentleman. Any officer or cadet who is convicted of conduct unbecoming an officer and gentleman shall be dismissed from the service." On the subject of the jurisdiction of the Court Martial, which was challenged by the relator, the District Court wrote:

"Surely, for its own protection, there must be power to dismiss from the military service an officer or cadet whenever 'conduct unbecoming an officer or gentleman' is discovered, no matter when it happened."

That general language of the court's opinion is unsupported by any reference therein to judicial authority or otherwise, or to statute, and cannot be accepted in the light of the construction which must be given to Article 8 as contrasted with Article 14 of the Articles for the Government of the Navy. The Government's brief would seek to expand an interpretation of the power under Article 8 by reference to a transcript of the Senate proceedings of March 2, 1863, relating to S. No. 467, entitled "An Act to Prevent and Punish Frauds upon the United States." 12 Stat. 696. It is not at all conclusive that the intent of Congress was to amplify Article 8. Moreover we have often been cautioned as to the hazards involved in endeavoring to determine "intent" as distinguished from the stated object of a statute.[3] The statute must be narrowly construed, particularly since it is in effect a criminal code. That was said in Rosborough v. Rossell, supra, 1 Cir., 150 F.2d 809, 816.

For the foregoing reasons I cannot accept the opinion in C. M. O. No. 7, page 42, of 1938, as based on sound authority.

█ Colonel Winthrop, an acknowledged authority, in Military Law and Proceedings, page 93 (2nd Edition, 1920), wrote:

"Jurisdiction after a second appointment or re-enlistment. * * * a subsequent re-appointment or re-enlistment into the Army would not revive the jurisdiction for past offenses, but the same would properly be considered as finally lapsed."

Winthrop had considered, it is true, only the questions of an officer or soldier in the Army who had been duly dismissed, resigned or discharged, but on principle there is nothing suggested for discriminating between the Army and the Navy in this respect.

For the foregoing reasons, I am compelled, though reluctantly in the light of the particularly reprehensible conduct of the relator as found by the Court Martial, to sustain the writ, since the Court Martial was without jurisdiction. As Judge Magruder said in Rosborough v. Rossell, supra, "we must apply the statute as it now stands."

Settle order on two days' notice.

---

[3] See address by Mr. Justice Frankfurter delivered before the Association of the Bar of the City of New York, 1947, on "Statutory Interpretation."