**LUCAS v. MATTHEWS et al.**

No. 665.

United States District Court
D. Maine, S. D.

April 20, 1950.

Morton C. Steinberg, Lakewood, N. J., for petitioner.

Edward J. Harrigan, Asst. U. S. Atty., Portland, Me., for respondents.

CLIFFORD, District Judge.

This is a petition for a writ of habeas corpus in which the petitioner alleges that he is unlawfully held and restrained of his liberty by Francis P. Matthews, Secretary of the Navy, and the Officer-In-Charge of the United States Naval Disciplinary Barracks, Portsmouth, New Hampshire, physically situated in the State of Maine, in which petitioner alleges that the Commandant of the Fourth Naval District had no jurisdiction to convene a general court-martial at the United States Naval Air Station, Lakehurst, New Jersey, between April 14, 1948, and May 20, 1949, during which period petitioner was tried at that Air Station.

### Statement of Facts

The petitioner, Carl Ellsworth Lucas, a Lieutenant (Junior Grade), Supply Corps, United States Navy, attached to the United States Naval Station, Lakehurst, New Jersey, was serving as Officer-In-Charge of the commissary store at the Air Station when the charges hereinafter referred to were preferred against him. The Lakehurst Naval Air Station was located within the territorial limits of the Fourth Naval District at Philadelphia, but was under the command of the Chief of Naval Airship Training and Experimentation at Lakehurst, New Jersey.

Prior to April 14, 1948, the Lakehurst Naval Air Station was under the command of the Commandant of the Fourth Naval District at Philadelphia. The Fourth Naval District in turn came under the command of the Chief of Naval Operations. As a result of an "Air Logistics Directive", issued by the Chief of Naval Operations on April 14, 1948, the Air Station was transferred and placed under the command of the Chief of Naval Airship Training and Experimentation at Lakehurst, New Jersey. The latter officer was responsible directly to the Chief of Naval Operations. The Air Logistics Directive, therefore, removed the Lakehurst Air Station from the command of the Commandant of the Fourth Naval District. On October 9, 1948, the officer in command of the Lakehurst Air Station addressed a request to Rear Admiral James L. Kauffman, United States Navy, the Commandant of the Fourth Naval District, to convene a general court-martial to try the petitioner for malfeasance in his assigned duties. The request was routed through Captain George H. Mills, United States Navy, the Chief of Naval Airship Training and Experimentation, the immediate superior of the requesting officer, to the Commandant of the Fourth Naval District. On October 11, 1948, the Chief of Naval Airship Training and Experimentation endorsed this request and forwarded it to the Commandant of the Fourth Naval District.

On November 10, 1948, the Commandant of the Fourth Naval District, on his own initiative, convened a court of inquiry to investigate the charges against petitioner. On November 17, 1948, the court of inquiry reported its findings and recommended that petitioner be given a general court-martial. The findings and recommendation were approved by the Commandant of the Fourth Naval District.

On January 18, 1949, the Commandant of the Fourth Naval District suggested that the Chief of Naval Airship Training and Experimentation himself originate a request to the Commandant of the Fourth Naval District to convene a general court-martial to try petitioner. This suggestion was made apparently for the purpose of strictly complying with the mandate of subsection 6(g) of General Order 245, that the request for court-martial should be from "The appropriate command in the * * * Naval Airship Training and Experimental Command."

On February 1, 1949, in accordance with this suggestion, the Chief of Naval Airship Training and Experimentation requested the Commandant of the Fourth Naval District, to convene a general court-martial to try petitioner. In his letter of request the Chief of Naval Airship Training and Experimentation included the nomination of certain officers attached to the Naval Air Station to serve on the court-martial. Further nominations of court-martial members were made by the Chief of Naval Airship Training and Experimentation in a letter directed to the Commandant of the Fourth Naval District, dated February 16, 1949.

On February 17, 1949, the Commandant of the Fourth Naval District, in response to the above request, ordered that a general court-martial be convened to try petitioner on charges arising out of alleged misconduct in connection with the duties of his office. As members of the court he named certain of the officers previously nominated by the requesting officer. On March 9, 1949, the court-martial was convened and the petitioner was brought to trial. No question is raised as to the jurisdiction of this Court to rule upon this petition; and no claim is asserted of any violation of due process of law in the conduct of the trial, or the severity of the sentence.

Eight general charges, several with numerous specifications, were brought against the petitioner. Petitioner pleaded guilty to certain specifications under three charges; namely, Scandalous Conduct Tending to the Destruction of Good Morals, Culpable Inefficiency in the Performance of Duty, and Violation of a Lawful Regulation Issued by the Secretary of the Navy. In addition, petitioner was found guilty by the court-martial of one specification under each of two charges, (a) Embezzling Money of the United States intended for the Naval Service thereof, and (b) Neglect of Duty. Certain additional specifications under these two charges were found not proved. Certain other specifications, and three full charges, were nolle prossed.

The general court-martial, having found petitioner guilty, as above stated, sentenced petitioner to be dismissed from the Naval Service and imprisoned at hard labor for a term of three years. On March 31, 1949, the convening authority approved the proceedings, findings, and sentence. On June 22, 1949, the Secretary, likewise, approved the proceedings and findings, but reduced the sentence of imprisonment at hard labor to 24 months. Petitioner is now serving that sentence.

As stated, the only question involved in these proceedings is the legality of the convening of the general court-martial which tried and convicted petitioner. The issue being purely one of law, the case has been submitted to this Court on briefs and exhibits, filed by both parties.

## Discussion and Conclusions of Law

(1) Petitioner contends that the action of the Commandant of the Fourth Naval District in convening, on November 10, 1948, the court of inquiry, to examine into the conditions existing in the commissary store under petitioner's charge, was beyond the powers of the Commandant for the reason that he had at that time no authority to convene a general court-martial. In support of this contention, petitioner cites Article 55 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Art. 55, which reads as follows: "By whom convened. Courts of inquiry may be convened by the President, the Secretary of the Navy, the commander of a fleet or squadron, and by any officer of the naval service authorized by law to convene general courts-martial."

Petitioner urges, therefore, that any recommendation of this court of inquiry, and any action of a court-martial based on such recommendation, is void. Petitioner has cited no authority to sustain this contention.

■ This Court is of the opinion that the action of the court of inquiry was not decisive or controlling on the discretion of the Commandant of the Fourth Naval District, who convened the general court-martial, (1857) 8 Ops.Atty.Gen. 335, 336, and, therefore, the validity of the court of inquiry is not material to the question of jurisdiction of the general court-martial which is the issue involved in this case.

(2) Petitioner contends that the precept or order of the District Commandant, convening the general court-martial to try petitioner, was fatally defective in that it failed to cite as authority subsection 6(g) of General Order 245, quoted in the margin[1]

---

1. Secretary of the Navy General Order 245, dated November 27, 1946, establishing and defining "The relationships which shall exist between and with shore activities of the Naval Establishments physically located within the boundaries of Naval Districts." The pertinent part of subsection 6(g) of General Order 245

which alone purported to give the Commandant power to convene a general court-martial in a naval unit not under his command.

The requirements for the citation, in the precept, of authority of the convening officer to convene a general court-martial, are set forth in section 329 of Naval Courts and Boards (1937), the pertinent portion of which reads as follows: "329. Where an officer is not authorized by law but specially authorized by the Secretary of the Navy * * * to convene a court-martial, the precept must cite the authorization in order to show affirmatively the jurisdiction of the Court. * * *"

The Commandant of the Fourth Naval District was specially authorized to convene general courts-martial by the Secretary of the Navy in Naval Speedletter A17–11 (1)/A17–20, dated March 4, 1946, addressed to the Commandant of the Fourth Naval District and others. This speedletter stated:

"You are hereby empowered to convene general courts-martial in accordance with authority vested in me by law. * * *"

▉ The District Commandant acted under this authority and properly cited it in the precept. General Order 245 was merely an administrative order, and, therefore, was not required by Sec. 329, cited above, to be set forth in the court-martial precept.

▉ Furthermore, failure to refer in a precept to the authority to convene a general court-martial does not void the proceedings, if it can otherwise be shown as a fact that jurisdiction actually existed. The existence of a particular fact not shown on the face of the record, but necessary to the jurisdiction of the court-martial over a particular case and acted upon by the court-martial, may be proved in defense of the judgment against a collateral attack. Givens v. Zerbst, 1921, 255 U.S. 11, 41 S.Ct. 227, 65 L.Ed. 475, affirming Ex parte Givens, D.C.N.D.Ga.1920, 262 F. 702.

(3) It is a further contention of petitioner that the authority cited in the precept; namely, the Speedletter of March 4, 1946, was ineffective and inappropriate for the reason that the District Commandant had lost the authority granted to him by the Speedletter, to convene a general court-martial at the Lakehurst Air Station, when that station was transferred from the military command of the District Commandant of the Fourth Naval District, and placed in the command of the Chief of Naval Airship Training and Experimentation.

This change of command had been effected, as hereinbefore noted, by Air Logistics Directive, issued by the Chief of Naval Operations on April 14, 1948. The arguments advanced by petitioner in support of this contention will be discussed and disposed of in the paragraphs which follow.

(4) Petitioner asserts that the "Air Logistics Directive", mentioned above, superseded General Order 245 in that it changed the terms of this general order and provided no "saving clause" to keep General Order 245 in effect.

From this premise petitioner argues and comes to the conclusion that subsection 6(g) of General Order 245 never went into effect with reference to the Lakehurst Air Station, or, at least, until the General Order 245 was re-issued as General Order 19, with subsection 6(g) included, on May 20, 1949.

▉ General Order 245 set forth the framework of command of all Naval Shore Activities in the United States. It provided that Naval District Commandants should have command of all activities within the geographical limits of their respective districts, with certain specified exceptions. Among these exceptions were activities under the command of the Chief of Naval Airship Training and Experimentation. No mention was made in General Order 245 of the Lakehurst Air Station, as such. The Logistics Directive made no

---

reads as follows: "(g) In order to expedite the administration of justice: (1) *general courts-marital of shore activities assigned to* the Operating Forces or the Naval Air Training Command, or *the Naval Airship Training and Experimental*

*Command, may be convened by the District Commandant when such action is requested by the appropriate command in the* fleets or Naval Air Training or *Naval Airship Training and Experimental Commands; * * *."* (Emphasis supplied.)

change in the terms of General Order 245, but merely moved the Air Station at Lakehurst from one chain of command established by General Order 245, to a second such chain of command, without in any way varying the general framework of command established in General Order 245. No "saving clause" was necessary to keep General Order 245 in effect. Subsection 6(g) had no application to courts-martial at the Lakehurst Air Station until April 14, 1948, when the command was transferred to the Chief of Naval Airship Training and Experimental Command at Lakehurst. Having in mind that the trial of the petitioner did not take place until March 8, 1949, or approximately one year after the transfer was made to the Chief of the Naval Airship Training and Experimental Command, it is apparent that from April 14, 1948, subsection 6(g) was in effect and permitted the Commandant of the Fourth Naval District to convene the general court-martial for the trial of the petitioner at the request of the Chief of the Naval Airship Training and Experimental Command.

■ (5) Petitioner urges that subsection 6(g) of the General Order was superseded by Navy Bulletin 47–237, addressed by the Secretary of the Navy to "All Ships and Stations" on March 6, 1947. This was subsequent to the date of General Order 245, and prior to the date of petitioner's court-martial. Bulletin 47–237 stated, in effect, that the Naval District Offices were shorthanded, and directed the discontinuance "of the practice of transferring general courts-martial cases from the *forces afloat* to Naval Districts." (Emphasis added.) It is apparent that this bulletin had no legal effect on shore activities, and as far as the Lakehurst Air Station was concerned had no effect whatsoever.

(6) One of the petitioner's basic and fundamental contentions is that the Secretary of the Navy "cannot direct the District Commandant to convene a court within the jurisdiction of a chief of any other activity not attached to a naval district", and that "the Secretary of the Navy has no authority to modify the statute", that is, Article 38 of the Articles for the Government of

the Navy. 34 U.S.C.A. § 1200, Art. 38. Said Article 38 was last amended and re-enacted on February 12, 1946, 60 Stat. 4, and provides, in part, as follows:

"Article 38. convening authority

"General courts-martial may be convened: * * * Second. When empowered by the Secretary of the Navy, by the commanding officer of a division, squadron, flotilla, or other naval force afloat, and by the *commandant* or commanding officer *of any naval district,* naval base, or naval station, and by the commandant, commanding officer, *or chief of any other force or activity of the Navy* or Marine Corps, *not attached to a naval district,* naval base, or naval station." (Emphasis added.)

The power to convene a general court-martial in the Navy rests on this authority granted by Congress.

■ This statute places no limitation upon the Secretary of the Navy with respect to the extent of his authority to empower the commands specified therein; and there is nothing contained in the statute which expressly or by implication limits the jurisdiction in which commands so empowered by the Secretary of the Navy may convene general courts-martial. The Commandant of the Fourth Naval District was empowered by the Secretary of the Navy to convene courts-martial. As stated, his authority carried no restrictions on it. The Secretary of the Navy specifically authorized commandants of Naval Districts to convene courts-martial in situations analogous to that of petitioner; and the Secretary acted within the authority granted by the statute. It is to be noted also that the petitioner's court-martial was convened by the Commandant of the Fourth Naval District at the specific request of the Chief of Naval Airship Training and Experimentation located in Lakehurst, New Jersey, in accordance with the provisions of subsection 6(g) of General Order 245.

■ In further support of his contention that subsection 6(g) is invalid, the petitioner cites section 344 of Naval Courts and Boards 1937, which provides, in part, as follows: "When after the careful inquiry required of the commanding officer

\* \* \* the commanding officer decides that the circumstances require trial by general court-martial, he shall submit to the Secretary of the Navy *or such superior officer as may be authorized to convene general court-martial* (certain statements and specimen charges and specifications)". (Emphasis added.)

A "superior officer", within the meaning of section 344, may be either an officer superior in rank or an officer superior in command. This Court notes that Rear Admiral James L. Kauffman, Commandant of the Fourth Naval District, was an officer senior in rank to Captain George H. Mills, Chief of Naval Airship Training and Experimentation.

 Petitioner's final contentions are, in substance, that even if the District Commandant could validly convene a general court martial, at the request of the Chief of Naval Airship Training and Experimentation, still (a), the court-martial in question was improperly constituted, for the reason that the officers making up the court were not under the command of the District Commandant and were not transferred to his jurisdiction, and therefore could not validly be ordered to duty on the court; and (b), the court-martial, so convened, had no jurisdiction of petitioner, because, he, in turn, had not been transferred to the jurisdiction of the convening authority. Both contentions can be answered together.

The District Commandant, requested by the Chief of Naval Airship Training and Experimentation to convene a general court-martial, under section 6(g) of General Order 245, was necessarily invested with the authority to appoint the members of the court-martial. This authority, coupled with the action of the Chief of Naval Airship Training and Experimentation in making certain officers available to the District Commandant for duty on the court martial trying petitioner's case, was sufficient to empower the District Commandant to appoint the nominated officers as members of petitioner's general court-martial; and, under the circumstances, the court-martial was not illegally constituted by reason of the fact that the officers making up the court were not under the command of the convening authority.

Nor is it material that petitioner was not attached to the command of the convening authority, in view of the ruling that the convening authority acted lawfully in convening petitioner's court-martial.

### Conclusion

This Court holds that the Commandant of the Fourth Naval District had jurisdiction to convene the general court-martial at the United States Naval Air Station, Lakehurst, New Jersey, for the trial of petitioner; that said general court martial was properly convened and had jurisdiction of petitioner; that petitioner is legally confined in the custody of respondent under sentence imposed by said general court-martial, as such sentence was reduced by the Secretary of the Navy.

It is therefore ordered, adjudged, and decreed that this petition for a writ of habeas corpus be and is hereby

Denied.